## MARTIN *v.* ALLEN.

## Opinion delivered July 10, 1922.

1. LANDLORD AND TENANT—CONTRACT CONSTRUED—LIEN.—Where a purchaser took possession of land under a verbal contract made in December, 1919, and afterward contracted in writing on June 22, 1920, (embodying the terms of the oral contract) that a failure to pay any installment of the purchase price should avoid the contract of sale and cause the relation of landlord and tenant should arise and relate back to January 1st of the year in which such default occurred, and a default occurred in 1920, the relation of landlord and tenant arose and related back to January 1st, and gave the landlord a lien on the tenant's crop raised on the premises superior to a mortgage on the crop executed by one to whom the tenant rented the premises.

2. APPEAL AND ERROR—RECORD SHOULD SHOW EXCLUDED TESTIMONY.— A cause will not be reversed for error in sustaining objection to a question addressed to a witness where appellant does not show in the record what the excluded testimony would have been.

Appeal from Columbia Circuit Court; *C. W. Smith,* Judge; affirmed.

*P. C. Crumpler, John E. Harris* and *Joe Joiner,* for appellants.

The relation of vendor and vendee and of landlord and tenant cannot exist at the same time. 92 Ark. 326. There was nothing to put the appellant on inquiry as to any relationship of landlord and tenant between Allen and Martin. Allen's contract, by which the relation of landlord and tenant was created on October 1, 1920, to date back to January 1st, was probably good as between the parties to the contract, but it did not affect the rights of Crumpler & Bustion, who had acted in good faith, and whose lien attached on February 13th, while Allen was holding Martin out to the world as his vendee. 60 Ark. 360; 31 *Id.* 131.

There was an actual delivery of part of the cotton in suit to Crumpler & Bustion, to be applied on account, before they knew of appellee's claim. 83 Ark. 118; 103 Ark. 95; 9 A. L. R. 326 and authorities cited; 71 Fla. 536;

150 Ky. 508, 150 S. W. 651; 66 Iowa 731, 24 N. W. 530; 81 Tex. 17; 16 S. W. 555.

*Wade Kitchens,* for appellee.

The agreement to sell was upon the express condition of payment of the purchase money at the time stated in the contract. Upon failure to perform that condition, the relation of landlord and tenant existed between the parties, which related back to the time of execution of the contract. 95 Ark. 34, 37; 48 Ark. 415.

Crumpler & Bustion took the mortgage without investigation as to who owned the land. It was their duty, at their own peril, to know who was the owner and the landlord. The landlord's lien is superior to that of a mortgage. 37 Ark. 403; 31 Ark. 557. They are chargeable with constructive notice of the tenancy. However they had actual notice. 69 Ark. 306. Appellee is entitled to recover his rent in accordance with the contract with Martin, without regard to any contract between the latter and the subtenant for rent. 103 Ark. 94.

Appellants did not buy the cotton from the subtenant. They did not claim, either in their answer or in their testimony, to be innocent purchasers. The fact is they were holding same for the subtenant for the purpose of selling later and applying the proceeds to the payment of the mortgage debt. The landlord's lien became a charge upon the crop raised on the land as soon as it came into existence. 95 Ark. 37; 25 *Id.* 417; 27 *Id.* 1.

SMITH, J. Appellee brought suit in a justice of the peace court to recover the value of 3,000 pounds of seed cotton as rent, and caused two bales of cotton to be attached in the hands of Bustion & Crumpler.

The testimony shows that in December, 1919, or January, 1920, appellee contracted to sell one Jim Martin a forty-acre tract of land. Martin was put in possession under this contract, and built a house and made other improvements. On June 22, 1920, appellee and Martin entered into a written contract concerning the sale of the

land, which was signed by both parties. This contract contained the following provisions, among others:

"But in case the said second party shall fail to make the payments aforesaid, or any of them, punctually and upon the strict terms and at the times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid, strictly and literally, without any failure or default, time being of the essence of this contract, then this contract shall, from the date of such failure, be null and void, and all rights and interests hereby created, or then existing, in favor of the said second party, his heirs or assigns, or derived under this contract, shall utterly cease and determine, and the premises hereby contracted shall revert to and revest in the said first party, his successors or assigns (without any declaration of forfeiture or act of reentry, or without any other act of said first party to be performed, and without any right in the said second party of reclamation or compensation for moneys paid or improvements made), as absolutely, fully and perfectly as if this contract had never been made.

"And it is hereby further covenanted and agreed by and between the parties hereto, that, immediately upon the failure to pay any of the notes described, all previous payments shall be forfeited to the party of the first part, and the relation of landlord and tenant shall arise between the parties hereto, for one year from January 1st immediately preceding the date of default, and the said party of the second part shall pay rent at the rate of 3,000 pounds of seed cotton for occupying the premises from said January 1st to the time of default, such rent to be due and collectable immediately upon such default."

The language quoted appears to be substantially identical with that construed in the case of *Murphy* v. *Myar*, 95 Ark. 32, where this court held that, upon default being made in the payment of the consideration contracted for, the vendee became the tenant of the vendor and the tenancy related back to the date of the contract.

Default was made by Martin in the 1920 payment called for by his contract, whereupon the vendor, as landlord, sued for the rent there agreed upon and attached two bales of cotton grown upon the land that year.

It is insisted that the doctrine of the case of *Murphy v. Myar, supra,* does not apply here for the reason that the written contract from which we have quoted was dated June 22, 1920, whereas prior to that time Martin had entered upon the land, and had rented it to Alice Wilburn for one-third of the cotton and one-fourth of the corn to be grown thereon, and thereafter, to-wit: on February 3, 1920, Alice Wilburn executed a mortgage to Bustion & Crumpler on the crop to be grown by her in the year 1920 on said land, to secure the advances necessary to make said crop, pursuant to which contract advances were made by the mortgagees in the sum of $278.

Martin was called as a witness for himself and his codefendants, and testified that he bought the land in January and entered into possession under an oral agreement of purchase. He was asked: "Were the details of this contract contained in this agreement?" An objection to that question was sustained. The witness then testified that the contract was signed later, and that he was present when Alice Wilburn executed the mortgage on the crop, and he stated to the mortgagees at the time that he was to claim as rent only one-third of the corn and one-fourth of the cotton. The mortgagees tendered the value of one-third of the corn and one-fourth of the cotton; but the tender was refused. They testified that they had no knowledge of the terms of the contract between Martin and appellee, and supposed Martin was in possession of the land as owner.

For the reversal of the judgment it is insisted that the relationship of landlord and tenant did not exist between appellee and Martin at the time the mortgage was executed, and that if that relationship existed it was created by the written contract of June 22, 1920, and the relationship of landlord and tenant related back only to

that date, and that prior thereto the mortgage was given and recorded and the mortgage lien therefore became the superior lien.

This argument fails, however, to take account of the fact that June 22, 1920, is not the date of the contract under which Martin entered upon the land. The contract was not reduced to writing until that time, but it was made in January and before Martin entered upon the land. There is no showing that the written contract did not embody the terms of the oral agreement. Such testimony as there is on the subject is to the effect that the written contract embodied the terms of the oral agreement.

It would, of course, have been competent to have shown that the provisions set out above were not a part of the original contract, if such was the case; and, had that proof been made, the lien of the mortgage would have been superior to that of appellee as landlord, because it would first have been created. But, as has been said, there was no offer to make this showing. We do not know what Martin would have testified. This court does not reverse where an objection is sustained to a question unless it is shown what the answer of the witness would have been. Martin might have testified that the oral agreement did not contain the stipulation set out above, converting the contract into a lease upon failure to pay the purchase money; but we cannot assume that he would have done so in the absence of an offer to show what his testimony would have been had he been permitted to testify. *Battle v. Guttrey,* 137 Ark. 228.

The decision of the question stated is conclusive of the other questions raised on the appeal, and, as no error appears, the judgment is affirmed.