SOLOMON *v.* KEESEE.

Opinion delivered January 8, 1923.

1. DEEDS—CONSTRUCTION OF INSTRUMENT.—Whether an instrument is a deed or bond for title must be determined by the parties' intention as derived from the whole instrument.

2. DEEDS—CONSTRUCTION OF INSTRUMENT.—An agreement for sale of land for $3,600, payable $300 cash and $330 yearly for 10 years as evidenced by 10 notes, deed to be held in escrow until the notes were paid, although using the words "grant, bargain and sell," *held* not a conveyance, but an agreement to convey.

3. VENDOR AND PURCHASER—AGREEMENT TO SELL WITH RENTAL CLAUSE.—An agreement for sale of land for $3,600, payable $300 cash and $330 yearly for 10 years, authorizing the purchaser to take immediate possession at an agreed rental of $330 per annum, said sum when paid to be applied upon the principal, *held* to create the relation of landlord and tenant until all of the purchase money is paid.

4. LANDLORD AND TENANT—LIEN FOR RENT.—Where cotton was grown on land held by a purchaser under an executory contract

with a rental clause, the vendor or landlord had a lien thereon, enforceable against one purchasing the cotton with notice thereof.

Appeal from Phillips Chancery Court; *A. L. Hutchins*, Chancellor; reversed.

### STATEMENT OF FACTS.

Louis Solomon and M. L. Hicks brought this suit in the chancery court against B. J. Stewart, T. W. Keesee Sr., and T. W. Keesee Jr., partners doing business under the firm name of T. W. Keesee & Co., to recover the possession of three bales of cotton sold by Stewart to his codefendant and on which the plaintiffs claim a landlord's lien.

On the 18th day of December, 1919, Louis Solomon and M. L. Hicks entered into a written contract with B. J. Stewart as follows:

"This agreement, made and entered into on this date by and between Louis Solomon and M. L. Hicks, as parties of the first part, and B. J. Stewart, as party of the second part, witnesseth:

"That for and in consideration of the sum of $3,600 to be paid by B. J. Stewart as follows: $300 cash in hand paid, receipt of which is hereby acknowledged, and the execution of ten promissory notes each for the sum of $330, bearing interest from date at the rate of ten per cent. per annum, interest payable annually, and due on or before one, two, three, four, five, six, seven, eight, nine, and ten years after date.

"And for the above consideration parties of the first part do hereby grant, bargain, sell and agree to convey unto the party of the second part the following described land, lying in the county of Phillips, State of Arkansas, to-wit:

"The southeast quarter of the northeast quarter of section thirty-one, township one south, range three east, containing forty acres, more or less.

"Parties of the first part agree to convey said land by good and sufficient warranty deed, free from all in-

cumbrances, and furnish an abstract for inspection, showing a good and merchantable title to same. Said deed to be placed in escrow with the Security Bank & Trust Company and held by said bank until the above notes have been paid.

"Party of the second part agrees to take said land and make said payments at the time and manner above set forth, and to pay all taxes on the land during the life of this contract.

"It is agreed that the second party shall take immediate possession of said land at an agreed rental of $330 per annum, said sum, however, when so paid to be applied upon the above principal."

The lands described in the contract were cleared and the cotton in controversy was grown upon them during the year 1920 by B. J. Stewart. On the first day of March, 1920, B. J. Stewart executed to T. W. Keesee & Co. a chattel mortgage on all of the crop of cotton he might raise on said land during the year 1920, for the purpose of procuring supplies for that year. The cotton in question was grown by Stewart on the land, and was turned over to the mortgagees in part satisfaction of their mortgage indebtedness. None of the notes given by Stewart to Solomon and Hicks, under the instrument copied above, were paid; nor did Stewart pay them any rent or recognize them as his landlord.

The chancellor was of the opinion that the instrument in question created the relation of vendor and vendee, instead of landlord and tenant. Whereupon the complaint was dismissed for want of equity, and the plaintiffs have duly prosecuted an appeal to this court.

*J. G. Burke,* for appellants.

The contract created a sale upon condition, and, upon default in making the payments as stipulated therein, the relation of landlord and tenant existed. 48 Ark. 413; 78 Ark. 574, 578; 18 Am. & Eng. Enc. of L. 168-169; 76 Ark. 578; 95 Ark. 32.

*John I. Moore,* and *John I. Moore, Jr.,* for appellees.

The contract is an absolute conveyance,—a consummated sale of land, with no provision for terminating the same upon failure to pay the purchase money notes and converting the relation to that of landlord and tenant. The two relations, vendor and vendee and landlord and tenant, are inconsistent and cannot exist at the same time. Where the relation of landlord and tenant does not exist, merely denominating the debt as rent in certain contingencies will not make it rent. 92 Ark. 324; 39 Ark. 560; 51 Ark. 218; 54 Ark. 16; 61 Ark. 515; 82 Ark. 209; 78 Ark. 230.

Hart, J. (after stating the facts). It is first sought to uphold the decree on the theory that the instrument copied in our agreed statement of facts was an absolute conveyance, and that the relation of landlord and tenant did not exist between the plaintiffs and the defendant, Stewart.

This court has held that whether an instrument of writing is a deed or bond for title must be determined by the intention of the parties derived from the whole instrument, and, in the application of the rule, has held that instruments of a similar character are bonds for title or agreements to convey land, and not a present conveyance of it. *Kelly* v. *Dooling,* 23 Ark. 582, and *Mays* v. *Blair,* 120 Ark. 69.

In this case Solomon and Hicks executed and delivered to Stewart an instrument binding themselves to make a deed upon the performance of the conditions mentioned, and Hicks on his part signed the same instrument to perform the terms which constituted the price of the land or the payment of rent. It would hardly seem probable that the vendors intended this as a present conveyance when only $300 out of $3,600, the amount of the purchase money, was paid. Although the instrument uses the words, "grant, bargain, and sell," they are coupled with the added words, "and agree to convey". When construed with reference to these words and the

surrounding circumstances, it would seem to have been their intention to execute an executory instrument.

This view is strongly supported by the last clause of the instrument which binds Stewart to pay an agreed rental of $330 per annum. Then, too, the instrument binds the vendors to execute a warranty deed to the land, to be placed in escrow with a designated bank until the purchase price was paid. If the instrument is to be construed as a present conveyance, then there was no use to provide for the payment of rent or for the execution of this deed in escrow.

When the contract is read from its four corners, in connection with the attending circumstances, we think the instrument was not a present conveyance, but was an executory contract to convey the land.

Again it is sought to uphold the decree on the theory that the contract in question created the relation of vendor and vendee, instead of landlord and tenant.

We do not agree with counsel in this contention. This court has held that by an agreement of this sort the relation of landlord and tenant is created, with all its rights and incidents, referable to the time provided in the contract for that relation to exist. *Murphy* v. *Myar,* 95 Ark. 32, and *Martin* v. *Allen,* 154 Ark. 612.

In the instant case the contract contained the following: "It is agreed that the second party shall take immediate possession of said land at an agreed rental of $330 per annum, said sum, however, when so paid, to be applied upon above principal."

Pursuant to the contract, Stewart did take immediate possession of the land, and raised a crop upon it. If the section just quoted does not have the effect to create the relation of a landlord and tenant between the parties, it has no meaning whatever, and had just as well been left out of the contract. It was evidently placed in the contract for some purpose, and it would seem that the only purpose it could legitimately serve would be to create the relation of landlord and tenant between the

parties until the whole purchase price was paid. In this way the vendor could secure himself the payment of the purchase price, and without it he would have but little security. There appears to have been no dispute that the cotton was grown on the premises, nor as to its purchase by Keesee & Co. with knowledge of that fact.

From the views we have expressed, it follows that the court erred in dismissing the complaint for want of equity; and for that error the decree will be reversed and the cause remanded for further proceedings in accordance with this opinion, and not inconsistent with the principles of equity.