GOULD-GALBRAITH SUPPLY COMPANY *v.* TRIPLETT.

Opinion delivered December 22, 1924.

1. LANDLORD AND TENANT—PRIORITY OF LANDLORD'S LIEN.—Under a rent contract with option to purchase, the owner of the land has a landlord's lien on crops grown thereon which may be enforced against one who furnished supplies to the tenant and who has received the crop with notice of such lien.

2. LANDLORD AND TENANT—NOTICE OF LIEN.—Where one who furnished supplies to a tenant purchased his crop without making inquiry as to whether there was a landlord's lien thereon, he could not claim to be an innocent purchaser if inquiry would have advised him of that fact.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Harry T. Wooldridge,* for appellant.

A purchaser of cotton is not liable for landlord's lien unless he is possessed of facts sufficient to put him on inquiry, which, if pursued with reasonable diligence, would result in the disclosure of the landlord's lien. 158 Ark. 432. Mere knowledge of the land upon which the cotton is raised is not sufficient to charge the purchaser with knowledge of a landlord's lien. 158 Ark. 432. In addition to the satisfaction of the account, appellant actually parted with something of value, and the case at 69 Ark. 306 relied on by appellee in the trial court is not decisive of the question.

*A. F. Triplett,* for appellee.

Under a rent contract with option to purchase, the vendor has a landlord's lien upon the crops grown upon the premises. 156 Ark. 387; 95 Ark. 32; 154 Ark. 612. The cancellation of a debt is not a payment of value if there be a landlord's lien on the crop raised. 69 Ark. 306. It was appellant's duty to investigate the title, and, having failed to do so, is chargeable with all facts which such investigation would disclose. 103 Ark. 91; 56 Ark. 473; 158 Ark. 432. See also 89 A. S. R. 373; 153 Ark. 599.

WOOD, J. This is an action by the appellee against the appellant, in the Jefferson Chancery Court, to enforce a landlord's lien. Appellant is an Arkansas corporation with its principal place of business at Pine Bluff, Arkansas. It is engaged in the business of furnishing supplies to farmers, tenants, sharecroppers, etc., and also in the business of buying and selling cotton and corn. Appellant has done a general furnishing business in the southwestern part of Jefferson County for some years. In the year 1922 Dave Drake was a negro tenant, raising a cotton crop on a certain parcel of land in Jefferson County, and the appellant furnished him the supplies for that year, which, with appellant's account brought forward from the previous year, amounted to the sum of $583.67. On the 11th of October, 1922, Drake delivered to appellant five bales of cotton grown upon the lands

mentioned. On January 15, 1923, appellant disposed of the cotton and, at the direction of Drake, applied $583.67 of the proceeds of such sale to the payment of Drake's account with appellant, and paid to Drake in cash the remainder of such proceeds, amounting to $19.45.

The appellee alleged that he was the owner of the lands on which the cotton mentioned was grown, and that Drake was his tenant under a written contract of lease; that Drake had not paid the rent for the year 1922, and that appellant had converted the proceeds of the cotton mentioned to its own use with notice of appellee's lien for rents, and prayed that appellant be required to account to him for such proceeds. The appellant denied generally the allegations of the complaint, and specifically that it had taken the cotton produced by Drake on appellee's land during the year 1922 and converted the same to its own use with notice that appellee was claiming a landlord's lien thereon for the year 1922.

The testimony for the appellee tended to prove that the appellee entered into a written contract with Drake in 1919, which contract provided for a cash payment and yearly rentals, and an option to purchase the same upon the payment of these rentals. Notes were given evidencing the amount to be paid for the rent of each year. The rent for the year 1922 was due on November 1, but was not paid. It was the custom of appellee's agent to furnish to the mercantile firms who supplied tenants on appellee's farm a list of those tenants. He furnished such a list to the appellant, and collected from the appellant all the rents due from tenants on all the lands except Dave Drake's. Appellant had paid the rents due appellee from another tenant under a similar contract of that of appellee with Drake. Appellee's agent did not indicate to the appellant that appellee would not insist upon his right to collect the rent from Drake for the year 1922. But, on the contrary, appellee's agent had frequent conversations with appellant's agent concerning the rent, extending from September until the institution

of this action, and he notified the appellant's agent that Drake owed the appellee the rent for the land for the year 1922.

The testimony on behalf of the appellant tended to show that it was the custom of appellant to indicate on its ledger sheets the printed word "landlord" opposite the name of the owner of the land whose tenants appellant was furnishing, together with the number of acres the tenant had in cultivation and the rent he was to pay. On the ledger sheets of Drake's account it is shown that he owned 80 acres of land, and that 50 acres were in cultivation in the year 1922, 35 acres being planted in cotton.

Appellant took a chattel mortgage to secure its account for the supplies furnished Drake for the year 1922. In the fall of 1922 Drake delivered to appellant five bales of cotton, for which appellant allowed him twenty-four cents per pound, amounting in the aggregate to $603.12, and deducted from such proceeds Drake's account, and paid him the balance in cash, the sum of $19.45. At that time, no one representing the appellee had notified appellant that appellee claimed a landlord's lien for the rent for the year 1922. The first knowledge that appellant had that appellee claimed rent on the land cultivated by Drake for the year 1922 was October 11 of that year, the date when Drake delivered the cotton to the appellant, and in all the dealings that appellant had with Drake from February, 1921, until October 1, 1922, appellee's name was never mentioned, and was not mentioned until this controversy came up. Appellant's agent didn't make any investigation of appellee's ownership of the land, because Drake told him that he owned the place, and also Caldwell informed appellant's agent that he had sold the place to Drake. Appellant did not sell the five bales of cotton obtained from Drake until January 15, 1923. Before that time the controversy between the appellee's agent and the appellant's agent concerning the five bales of cotton had arisen. Appellee's agent and appellant's agent had repeated conversations

concerning the same, and appellee's agent had written appellant's agent a letter claiming the proceeds of the cotton in appellant's hands.

The testimony on behalf of the appellee and appellant is voluminous, but the above sufficiently presents their respective contentions.

The trial court found that the appellant had no actual notice of appellee's ownership of the land on which the cotton was grown, but it knew the land, and the record of deeds showed that the ownership of that land was in the appellee, and that therefore appellant had constructive notice of appellee's right to the cotton grown by Drake in the year 1922. The court thereupon rendered a judgment in favor of the appellee in the sum of $603.12, and declared the same a lien upon the proceeds of the cotton in the hands of the appellant, and directed the appellant, as trustee, to account to the appellee for same. From that decree is this appeal.

Under a rent contract with option to purchase, such as that under review here, the owner of the land has a landlord's lien upon the crops grown upon said land, which lien is superior to the lien of one who furnishes supplies to the tenant for the making of crops, and can be enforced against one who has furnished such supplies and who has received the crops of the tenant with notice of such lien. *Solomon* v. *Kesee,* 156 Ark. 387; *Martin* v. *Allen,* 154 Ark. 612; *Murphy* v. *Myar,* 95 Ark. 32; *Judge* v. *Curtis,* 72 Ark. 132. In the last case we said: "Where the plaintiff has a lien on the property taken and sold by the conversioner, as in the case at bar, his remedy is in equity, not for the value of the property taken, for he is not, in that case, the owner thereof, but to fix his lien upon the proceeds of the property in the hands of the conversioner, it being an equitable doctrine that a lien may be fixed upon the proceeds of the property where the lien on the property itself has been destroyed by the wrongdoer." See also *Reavis* v. *Barnes,* 36 Ark. 575.

The decree of the court holding the appellant liable for the proceeds of Drake's cotton in its hands is correct

for several reasons. In the first place, according to the undisputed evidence, the appellant had actual notice of appellee's claim of a landlord's lien on the cotton before it sold the same. Notwithstanding this notice, appellant sold the cotton and appropriated the entire proceeds, except the sum of $19.45, to the payment of Drake's account. This it could not do. *Pape* v. *Steward*, 69 Ark. 306.

The cotton was grown near Pine Bluff, and delivered by Drake to the appellant, and the appellant accepted the same, as its agent says, believing that Drake was the owner. But the appellant had no right to purchase and receive the cotton without making some inquiry as to a possible landlord's lien, and could not claim to be an innocent purchaser when, upon such inquiry, it would have necessarily ascertained the fact that there was a landlord's lien on the cotton. *Walker* v. *Rose*, 153 Ark. 599; *Merchants' & Planters' Bank* v. *Meyer*, 56 Ark. 499; *Jacobson* v. *Adkins*, 103 Ark. 91; *Van Etten* v. *Lesser-Goldman Cotton Co.*, 158 Ark. 432.

We cannot concur in the views of learned counsel for the appellant that the preponderance of the evidence shows that the findings and decree of the chancellor are erroneous. The finding of the chancellor that the appellant had no actual notice, we believe, is against the undisputed evidence, but the decree is correct, notwithstanding such erroneous finding. The other findings of the trial court, which are correct, are sufficient in themselves to justify the decree. Finding no error, the decree is affirmed.