FRAZIER *v*. NICKS.

Opinion delivered February 28, 1927.

1. LANDLORD AND TENANT—RIGHT TO STIPULATED RENT.—A landlord is not required to accept less rent than that stipulated because of unforeseen and unpropitious crop conditions which rendered the lease for the year unproductive and unprofitable to the tenant.

2. LANDLORD AND TENANT—LEASE CONVERTIBLE INTO SALE.—A contract of lease may provide that it may be converted into a sale at termination of the lease if the lessee complies with the contract provisions as to payments.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*Mehaffy & Mehaffy*, for appellant.

*A. L. Rotenberry* and *June P. Wooten*, for appellee.

WOOD, J. This is an action by Nicks against Hatter and Frazier on a note in the sum of $9,450, executed by Hatter on March 1, 1923, to J. H. Frazier, Sr., and indorsed by J. H. Frazier. It is alleged that the note was given as collateral security to secure a note of $6,000 due on January 1, 1924; that demand was made for payment and refused, and the note was duly protested. The answer denied the material allegations of the complaint. The defendant alleged that Isabel Frazier entered into a contract with Nicks on the first of February, 1923, to purchase certain lands in Jefferson County, Arkansas, and that the contract was evidenced by an instrument which was attached to the complaint; that the plaintiff violated the contract by renting the property to other persons. It was alleged that they had paid the plaintiff more than the rental value of the place for the year they occupied the same, and that nothing was due by them on the instrument upon which the action was founded. The contract of February 1, 1923, is as follows:

"For and in consideration of the sum of six thousand dollars, due and payable on the first day of January, 1924, evidenced by the promissory note of Isabel H. Frazier of this date for the said sum due and payable, with interest from date, at the rate of eight per cent. per annum.

and for the consideration of the debts, covenants and agreements hereinafter contained, D. W. Nicks hereby lets, leases and demises for and during the period commencing January 1 and ending December 31, 1923, unto the said Isabel H. Frazier, lands in Jefferson County, Arkansas, described as follows: (Here follows description of lands).

"It is expressly understood and agreed that Isabel H. Frazier will commit no waste upon the said premises, and that she will, at the expiration of this lease, deliver possession of said premises to the said D. W. Nicks in as good condition as the same were in when received by her, ordinary wear and tear incident to her use excepted, without legal notice to quit and vacate, as provided by law, which is hereby waived.

"All improvements placed upon the said lands shall be at the expense of Isabel H. Frazier, and no liens shall be fixed thereon without the consent of D. W. Nicks first given in writing. All improvements placed upon said lands shall immediately become a part of the realty, and shall not be removed by the said Isabel H. Frazier; and all repairs made upon the premises shall be at the expense of Isabel H. Frazier.

"And for the consideration aforesaid, and the assumption and payment by Isabel H. Frazier of the indebtedness of D. W. Nicks, amounting to $32,320, with interest at the rates recited in the note, which is secured by deeds of trust and vendor's liens covering said lands, the payment by Isabel H. Frazier of all taxes and legal assessments which are or may become due, and the payment of all insurance premiums which are or may become due, the said D. W. Nicks and Mary R. Nicks agree to execute a warranty deed conveying said lands to Isabel H. Frazier.

"It is understood that Isabel H. Frazier is to make all such payments as they become due, whether before or after December 31, 1923. It is also understood that the indebtedness of D. W. Nicks mentioned herein as amount-

ing to $32,320, includes all his indebtedness secured by liens of any kind on said lands.

"It is distinctly understood and agreed that the relation of landlord and tenant shall not be disturbed by any of the covenants or agreements herein contained, and that the same shall not in any way change, modify and nullify the relationship of landlord and tenant existing between the parties hereto at the time of the execution of this agreement.

"Witness our hands and seals, this first day of February, 1923.

(Signed) "Isabel H. Frazier,
"D. W. Nicks,
"Mary R. Nicks."

Contemporaneous with the above contract, I. H. Frazier and Isabel H. Frazier executed an instrument in which they promised to pay Nicks, on January 1, 1924, $6,000, and pledged him as collateral security therefor the note of $9,450 above mentioned, and granted to Nicks the right to sell the same upon the failure of Frazier and wife to pay the note for $6,000 due January 1, 1924.

The collateral note on which the note was founded has written on its face the following recital: "This note is put up as security for $6,000."

We deem it unnecessary to set out the testimony in detail. Suffice it to say the testimony of Nicks tends to prove that the contract was executed by Isabel H. Frazier and her husband, I. H. Frazier, and that I. H. Frazier, the son of J. R. Frazier, stated to witness that he was willing to put up the note in suit as security on a rental proposition with the privilege of buying the place. I. H. Frazier asked witness how it would suit to make this rental with the privilege of buying, and witness told him that it would suit all right. I. H. Frazier was to pay the taxes and insurance and meet all payments as they fell due, and the contract was made to that effect. The testimony of witness was further to the effect that Isabel Frazier and I. H. Frazier went into possession of the property, that they held it for the year 1923, were not able

to make the first payment when it came due, and abandoned the proposition and surrendered possession to witness. The note in suit was given as security for the rent. That was thoroughly understood by all the parties. The rental value of the place for the year it was occupied by I. H. Frazier and his wife was $3,200. The witness could not have rented the place for $6,000, but could have rented it for about $3,500. The year that Frazier and wife worked it was a very bad year. After that year the witness rented the property for $3,200 and reserved the storehouse. If the contract had been for rental value alone it would have been about $3,500. I. H. Frazier paid the sum of $919.64 to witness for taxes and insurance for the year he occupied the place. Frazier also paid witness some accounts which witness had advanced for supplies to labor and for working and making the crop the year that Frazier occupied the place, which amounted to about $1,100. Frazier went ahead and used this labor, and would have had to make these payments in order to keep the labor, and he got the benefit of it. The payment was for money and provisions which witness had advanced to his laborers on the place and which the Fraziers would have had to pay in order to keep them.

There was testimony tending to corroborate the testimony of Nicks in regard to the Fraziers not being able to make the payments and finance the place, and that they had to give it up on that account, and, after the place was surrendered by them, Nicks rented the place the next year, 1924, to one Graham. There was testimony tending to show that the note in controversy was duly protested for nonpayment.

John R. Frazier and Earl Frazier and Mrs. I. H. Frazier testified on behalf of the appellants, and their testimony tended to prove that the note in controversy was given as a collateral note for the purchase of the place; that the note would not have been put up as collateral as a guaranty of rent on the plantation; that the rent of the plantation in ordinary years would be between

$2,800 and $3,200, but that for the year 1923 it was not worth anything like that. The testimony of I. H. Frazier in effect contradicted the testimony of Nicks tending to prove that the Fraziers surrendered the place and abandoned their contract to purchase the same. On the contrary, the Fraziers' testimony tended to show that he had made arrangements to finance the crop for the year 1924, and so informed Nicks in December, 1923, but Nicks had rented the place to one Graham, and witness therefore had to move. Witness conceded that he and his wife could not make the payments due for the year 1923.

The above are substantially the facts upon which the court rendered a decree in favor of the appellee against the appellants in the sum of $2,000, from which decree is this appeal.

The decree of the court on the issues of fact involved was not clearly against the preponderance of the evidence. The testimony tended to show that the rent of the place during ordinary years was between $2,800 and $3,200; that appellee could have rented the place for the year 1923 for at least $3,200. This amount was conceded by the Fraziers to be the fair rental value for ordinary years. That was the correct standard. The appellee, as the landlord, was not required to accept a rental less than that because of unforeseen and unpropitious crop conditions which rendered the year 1923 unproductive and unprofitable to the tenants on the place.

The court, by its decree, reduced the rental to the sum of $2,000. This was a less sum than the court might have justly found by fair preponderance of the evidence. While there is a decided conflict in the oral testimony as to whether the note in controversy was given as collateral to secure the amount due under the contract of February 1, 1923, as above set forth, we are convinced that it was given as a collateral to secure any amount that might be due January 1, 1924, under that contract. The written contract speaks for itself. It is a contract of lease which, at the termination thereof, if the lessee complied with the provisions of the contract with refer-

ence to the payments, was to be converted into one for the purchase of the property and the lessor was to make the lessee a warranty deed conveying the same.

In *Ish* v. *Morgan,* 48 Ark. 413-415, 3 S. W. 440, we said: "The agreement between the parties about the possession must determine the relation between them, and, though it consists of two separate and distinct stipulations, they are to be read together as one contract, and that contract is competent evidence to establish or rebut the relationship of landlord and tenant. If the contract shows that the defendant was in under an agreement to purchase, the idea of a tenancy was rebutted.   *   *   *   But if, on the other hand, the meaning of it is that he is to pay rent, or a compensation for the use of the land, then he was a tenant."

In *Thomas* v. *Johnson,* 78 Ark. 574, 95 S. W. 468, we said: "The parties to an agreement for the sale of land may also contract with the right, at the election of either party in the future, upon the performance or nonperformance of certain conditions, to treat the transaction either as a purchase and sale contract or a lease." See also *Block* v. *Smith,* 61 Ark. 266, 32 S. W. 1070; *Levy* v. *McDonnell,* 92 Ark. 324, 122 S. W. 1002, 135 Am. St. 183. We have recognized this doctrine in several cases in regard to executory contracts for the sale of land. We see no reason why the doctrine should not operate conversely where the parties have, by their contract, agreed that the relation should be that of landlord and tenant, with a provision that, at the end of tenancy, all the provisions of the contract having been performed, the contract shall then become one of sale and purchase, requiring the lessor to make an absolute deed to the property. Such, we believe, was the effect of the contract under review. The judgment is therefore correct, and it is affirmed.

MEHAFFY, J., disqualified.