MORRIS *v.* BOWMAN.

Opinion delivered January 16, 1928.

1. LANDLORD AND TENANT—SUBROGATION TO LANDLORD'S LIEN.—Where appellees furnished rice seed to a farmer on a landlord's promise that the seed should be paid for, and the farmer did not make the payment, and the landlord failed without making such payment, appellees were entitled to benefit of the landlord's lien and of chattel mortgages taken by the landlord against the rice crop, and to a proportion of the funds derived from a sale of the crop that the debt for seed bore to the total cost of producing the crop. .

2. LANDLORD AND TENANT—WHEN RELATIONSHIP CREATED.—The contract providing that a farmer should pay annual rentals for a specified amount for a period of years, and that, if all payments were made and conditions performed, the owner would convey land to the farmer, and that the annual payments should be treated as rent until all payments should be made and other conditions performed, *held* to create the relation of landlord and tenant until the conditions should be performed.

3. LANDLORD AND TENANT—COST OF PRODUCING CROP.—Where appellees furnishing seed to a farmer were entitled to the benefit of the landlord's security against the crop, and to the same proportion of the crop derived from the sale of crop that the cost of seed bore to the cost of producing the crop, *held* that the cost of producing the crop includes the annual rental payments under the contract providing for such rentals, and performance of other conditions under such contract.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Special Chancellor; affirmed.

*Cooley, Adams & Fuhr,* for appellant.

*Charles D. Frierson,* for appellee.

SMITH, J. The decree from which this appeal comes contains findings of fact the correctness of which is not questioned, except as to certain details which we think are unimportant, and from which we quote the material facts, which are as follows:

The suit was brought by Bowman & Brown, who are dealers in seed rice, against C. O. Wofford, the First National Bank of Jonesboro, and R. S. Morris, as receiver of the bank, to recover the purchase price of a quantity of seed rice sold by the plaintiffs to Wofford in the

year 1926. The plaintiffs claim the sale was made to the bank direct, but the court found that the sale was made to Wofford upon the promise of the bank to advance Wofford the money to pay for the rice. The rice was purchased for the purpose of being planted by Wofford on four rice farms which Wofford was operating, substantially for the use and benefit of the bank, as well as for himself, under separate contracts, one of which covered each of the farms.

The bank furnished Wofford the money necessary to grow the crops of rice, and had done so prior to 1926, and it was the intention of the parties, including the bank, that payment should be made to Bowman & Brown in cash for the rice immediately after its delivery, and it is admitted that the bank would have paid for the rice, or have furnished the money for that purpose, but for the fact that it failed, and was taken in charge by a receiver before the payment was made. The bank made advances on the rice crops before its doors were closed. After the failure of the bank it was necessary to make other advances to mature and gather the crops, and the receiver himself made certain advances. Other advances were made by three other creditors of Wofford in making the crops, under an arrangement made by the receiver after taking charge of the bank, and all parties concede the priority of the claims of these three last-mentioned creditors.

Wofford was a member of the Rice Growers' Association, and had a contract with that organization whereby he was required to deliver his rice to it for sale. The court permitted this contract to be performed, and the rice was delivered to and sold by the association, which made a report showing the net proceeds of the sale, and this money is now, in effect, a fund in court, to be distributed as ordered by the court.

The court found the amount due Bowman & Brown for the rice was $2,726.80, with interest, and that the bank and its receiver had made advances against the rice crop aggregating $30,709.62, and that the bank had,

as security for its advances, the lien of a landlord on the crop of rice grown on one of the farms and chattel mortgages on the other crops of rice. The court deducted from the net proceeds of the sale of the rice, as reported by the Rice Growers' Association, the advances by the three preferred creditors, and directed that the balance be apportioned between the bank and its receiver, on the one hand, and Bowman & Brown, on the other, in proportion to the advances each had made to enable Wofford to make and gather the crop.

It was ascertained that the indebtedness due Bowman & Brown for the seed rice was .0986 per cent. of the total cost of producing and marketing the rice, and it was ordered that that per cent. of the net proceeds of the rice be paid them, and that as to the balance they have judgment against the bank and its receiver, with the proviso, "that, as against the bank and its receiver, no execution may issue, but said judgment shall participate in dividends and distributions with other general debts and obligations of the bank." From this decree all parties have appealed.

It is immaterial whether the bank agreed to pay for the rice or to furnish Wofford money for that purpose, as the fact is undisputed that, if the bank did not promise to pay Bowman & Brown, the rice was sold upon the faith of the promise of the bank that the rice would be paid for. It is true that the bank has liens upon the rice crop, while Bowman & Brown have no lien, but it was the theory of the court below that the bank was surety for Wofford, and had securities for the repayment of advances to Wofford sufficient to indemnify it for its advances to him in making the crop, and that therefore the rights of Bowman & Brown should be worked out through these securities.

The question of remedy is unimportant here, as we have, in effect, a fund in court, and the question is how to disburse this fund so as to administer equity. 38 C. J., § 28, page 1382.

The court below found all the indebtedness which had been incurred in producing the rice, and decreed that the persons to whom the indebtedness was due should be paid out of the proceeds of the sale of the rice a per cent. equaling the proportion which a particular indebtedness bore to the whole indebtedness.

It is the insistence of the bank and its receiver that; as Bowman & Brown had no lien on the rice crop, they should be treated as common creditors of the bank and be required to prove their demand and accept the dividends paid all other common creditors. On behalf of Bowman & Brown it is insisted that they should be paid the entire balance of the purchase price of the rice due them, for the reason that no crop would have been made but for the seed rice which they furnished.

We are of the opinion, however, that the findings and directions of the court below more nearly conform to the equity of the case than do either of the contentions of the litigants. We think it would not be equitable to permit the bank or its receiver to appropriate the entire proceeds of the rice crop, nor would it be equitable to permit Bowman & Brown to receive a larger per cent. of the proceeds of the rice crop than the amount their advances bore to the total sum advanced.

The bank was Wofford's surety, and it held securities against the rice crop, and the equities of Bowman & Brown must be worked out through these securities. It is permissible to do this where the equities of the parties require that it should be done.

In the case of *Whitehead* v. *Henderson*, 67 Ark. 200, 56 S. W. 1065, it was said:

" 'The general doctrine,' says the Supreme Court of the United States, 'that a creditor has a right to claim the benefit of a security given by his debtor to a surety for the latter's indemnity, and which may be used, if necessary, for the payment of the debt, is not questioned. The security in such case is in the nature of trust property, and the right of the creditor arises from the natural justice of allowing him to have applied to the discharge

of his demand the property deposited with the surety for that purpose, if required by the default of the principal.' *Chamberlain* v. *St. Paul, &c., R. Co.,* 92 U. S. 299, 306, 23 L. ed. 715; 1 Story Eq. Jur., § 502, and authorities there cited.''

Had the bank paid Bowman & Brown for the rice as it agreed to do, and no doubt would have done had its doors not been closed, it would have had as security therefor its lien as a landlord and its chattel mortgages on the rice, but these would have been without value had not some one furnished the seed rice to make the crop, and Bowman & Brown performed that service. In furnishing the seed rice, Bowman & Brown did not intend to become general creditors of the bank, as the transaction was intended to be a cash one. We conclude therefore that equity has been administered.

Cross-appellants insist that the court erred in casting up the amounts which the bank should have as its contribution to the production of the rice crop. One of the items for which the court allowed the bank credit was that of $5,700 for the rent of one of the farms for the year 1926. It appears that the bank had acquired one of the farms cultivated by Wofford through a mortgage foreclosure, and had contracted to sell it to Wofford upon certain conditions. The contract provided that Wofford should pay an annual rental of $5,700 for a period of years and should perform certain other conditions, and that, if all these payments were made and conditions performed, the bank agreed to execute a deed to Wofford for the land, but that the annual payment of $5,700 which Wofford agreed to make should be treated as rent until all payments were made and other conditions performed.

A contract of this kind creates the relation of landlord and tenant until the conditions are performed, whereupon the right to a deed accrues. *Frazier* v. *Nicks,* 172 Ark. 1139, 292 S. W. 368, 51 A. L. R. 1287; *Solomon* v. *Keesee,* 156 Ark. 387, 246 S. W. 469; *Martin* v. *Allen,* 154 Ark. 612, 243 S. W. 802; *Levy* v. *McDonnell,* 92 Ark.

324, 122 S. W. 1002, 135 Am. St. 183; *Thomas* v. *John-
ston,* 78 Ark. 574, 95 S. W. 468; *Block* v. *Smith,* 61 Ark.
266, 32 S. W. 1070; *Madden* v. *Wheeler,* 140 Ark. 55, 215
S. W. 699; *Smith* v. *Berkau,* 123 Ark. 90, 184 S. W. 429.

These conditions have not all been performed. Most
of the annual payments have not accrued and have not
been paid, and the relation of landlord and tenant, which
the contract created, therefore continued and was the
relation between Wofford and the bank during the year
1926. The agreed rental was $5,700, and it was proper
therefore to include this rent as one of the items entering
into the cost of the production of the rice. This was the
view of the court below, and we think it was correct.

We are of the opinion that the decree of the court
below upon the whole case was correct, and it is therefore
affirmed.