RENSHAW et al. v. SULLIVAN. (No. 12065.)

Court of Civil Appeals of Texas. Fort Worth. Jan. 12, 1929.

Rehearing Denied Feb. 16, 1929.

Burch & Woodruff, of Decatur, and Templeton & Templeton, of Fort Worth, for appellants.

McMurray & Gettys and Patterson & Cates, all of Decatur, for appellee.

CONNER, C. J. This action was instituted on May 17, 1927, in the district court of Wise county by G. W. Sullivan, as plaintiff, against Luther M. Terry, L. W. Renshaw, Wayne Renshaw, Joe Wren, and R. J. Anderson, as defendants. The object of the action was to recover of said Luther M. Terry the sum of $2,660, which the plaintiff claimed said Terry owed him for the years 1925 and 1926 as rent for 240 acres of agricultural lands situated in Wise county, and which he claimed he had leased to said defendant Terry about the last of December, 1922, at an agreed annual rental of $1,330, payable in cash each year from the proceeds of the crops raised on the premises as such crops were gathered. The petition charged that said tenant had gathered and sold and disposed of the crops raised on said premises during 1925 and 1926 without paying the rent owing to the plaintiff, which he charged amounted to $1,330 per year, aggregating $2,660 for the two years. The plaintiff sought to recover from the other defendants upon an allegation "that said defendants each and all wrongfully appropriated and converted to their own use and benefit all of said crops on which this plaintiff had and held such landlord's lien, having so taken possession of and converted said crops for each of said years as same were gathered and thereby deprived this plaintiff of his right to have same used and applied in the payment of his said rents to his damage in the sum of $2,660.00 for which he sued with interest and cost."

The plaintiff's suit is based on the following contract entered into between defendant Terry and plaintiff, which, so far as involved in this appeal, reads as follows:

"State of Texas, County of Wise:

"Know all men by these presents, that G. W. Sullivan, as party of the first part, and L. M. Terry, as party of the second part, both of Wise County, Texas, have this day made and entered into the following agreement, to-wit:

"Party of the first part, for and in consideration of the sum of $100.00 to him in hand paid by L. M. Terry, the receipt of which is hereby acknowledged, hereby agrees, binds

and obligates himself, his heirs, executors and administrators, to give party of the second part the option to buy and to convey to him by general warranty deed or to any person, persons or corporation he may designate, and to furnish and deliver to him a complete abstract showing a good and merchantable title, at any time that said party of the second part may demand on or before the first day of January A. D. 1927, for the sum of $19,000.00 to be paid to party of the first part according to the following terms, all in cash, the following described lands situated in the County of Wise, State of Texas, more particularly described as follows: (Here follows a description of the two tracts of land situated in Wise County, aggregating 240 acres.)

"Said party of the first part further agrees, binds and obligates himself that he will let the party of the second part remain upon the above described property and use and occupy it and to cultivate said lands during the term and life of this option, conditioned that the party of the second part will pay to party of the second part the sum of $1,330.00 each year, payable in the fall or the first day of January of each year after the harvesting of crop upon the lands. * * *

"Witness our hands in duplicate, this the 29th day of Dec., 1922.

"G. W. Sullivan, First Party.
"L. M. Terry, Second Party."

The above was duly acknowledged by G. W. Sullivan and L. M. Terry on said 29th day of December, 1922.

The defendant Terry pleaded a general demurrer and a general denial. The defendants Renshaw, in addition to the general demurrer and general denial, specially pleaded that the sum claimed by the plaintiff as rent for the years 1923 and 1924 had been paid, and the rent for the year 1925 had been settled by a judgment in favor of plaintiff against defendant Terry. These defendants further pleaded that during the time Terry occupied the premises in controversy the plaintiff had permitted Terry to use and cultivate the farm and dispose of all crops raised thereon as his own, and hence had waived the right to the landlord's lien claimed.

The case was submitted to a jury, and their findings and the supplemental findings of the court not questioned are to the effect that while the rentals as referred to in the court's charge for the year 1925 had not been paid, the manner and method of the plaintiff Sullivan in reference thereto was such as to reasonably indicate to the defendants and cause them to reasonably believe that Terry was authorized to sell the crop of that year, and plaintiff had waived his landlord's lien. As to the crop for the year 1926, however, the undisputed evidence shows that on the 13th day of September of that year the plaintiff caused a levy to be made on one bale of the cotton raised on the premises in controversy, claiming a landlord's lien for the unpaid rent of that year; and the findings are to the further effect that after the levy of that writ L. W. Renshaw and Wayne Renshaw purchased in the open market the cotton raised on the Terry premises, of the total value of $1,501.59. Based on such findings, and the court's evident conclusion that the defendants Renshaw were affected with notice of the landlord's lien and that it had not as to them been waived, judgment was entered against L. W. and Wayne Renshaw and Terry in favor of plaintiff, Sullivan, for the sum of $1,419.75; that being the amount of the rent with interest due the plaintiff, Sullivan. The judgment was further in favor of defendants Joe Wren and R. J. Anderson, the finding being that they had not appropriated any of the crop of 1926. From the judgment so rendered, the defendants L. W. and Wayne Renshaw have prosecuted this appeal.

The principal contentions of appellants, presented in various forms, are to the effect that the contract between the plaintiff Sullivan and Terry did not create the relation of landlord and tenant, and that hence the court should have given the peremptory instruction requested by appellants, and further that the court erred in assuming in his charge that the sums specified in the contract for payment of Terry's permission to remain on the premises was rent.

The cardinal rule for the construction of written instruments of the character of the one under consideration is well stated in the opinion of Mr. Justice Speer, of Section B of our Commission of Appeals, in the late case of Couch v. Southern Methodist University, 10 S.W.(2d) 973. In construing a deed there under consideration, the judge said: "The first rule in construing a written instrument always is to seek to arrive at the intention of the parties to the end that their purpose may be effectuated. There are many artificial aids in the inquiry, but at last the intention of the parties as gathered from the instrument as a whole must prevail."

The contract under consideration here indicates, as we think, that the parties thereto had in view two separate provisions. The first, and perhaps the major, object was to confer upon the defendant Terry the right within the period specified to purchase the premises at the price stated. The consideration for this optional right was $100, the receipt of which Sullivan acknowledged. The right was unconditional. It adhered throughout the term specified. As an incident to the right given to Terry to purchase, he was granted the further option of remaining upon and using the premises; but in event he elected to do so, the contract specifically required that he should pay the sum of $1,330 for each year he should so possess and use the premises. As we view the contract, these several

provisions in no wise conflict. They present a harmonious whole, and no other basis for the right of Sullivan to the $1,330 can be suggested, other than that this sum was the compensation to be paid as rental. Terry evidently, at every period prior to an exercise of his option to purchase, bore the relation of a tenant to the plaintiff, Sullivan. See 16 R. C. L. tit. Landlord and Tenant, § 299, p. 208, to the effect that such contractual relations are consistent and permissible. In Frazier v. Nicks, 172 Ark. 1139, 292 S. W. 368, 51 A. L. R. 1287, the Supreme Court of Arkansas, construing a somewhat similar contract, held it to be a contract with provisions for it to be converted into one of purchase of the property, and further held, as stated in the syllabus, that: "Parties to contract for lease of land may contract that it shall become a contract of sale and purchase, requiring lessor to make absolute deed to lessee, at end of tenancy, if all provisions are performed."

In the opinion it is said: "In Ish v. Morgan, 48 Ark. 413, 415, 3 S. W. 440, 441, we said: 'The agreement between the parties about the possession must determine the relation between them, and, though it consists of two separate and distinct stipulations, they are to be read together as one contract, * * * and that contract is competent evidence to establish or rebut the relationship of landlord and tenant. * * * If the contract shows that the defendant was in under an agreement to purchase, the idea of a tenancy was rebutted. * * * But if, on the other hand, the meaning of it is that he is to pay rent, or a compensation for the use of the land, then he was a tenant.' "

In Words and Phrases, Second Series, vol. 3, p. 11, it is said: "The relation of 'landlord and tenant' is that which subsists by virtue of a contract for the possession of lands at will, for a definite period, or for life. Foss v. Stanton, 57 A. 942, 76 Vt. 365. The relation of landlord and tenant arises under contract, express or implied, for possession of lands or tenements in consideration of certain rent to be paid therefor."

A further contention of appellants is to the effect that the cotton purchased from defendant Terry during the crop year of 1926 was in the open market and for the account of the Rhome Milling Company, a corporation which at the time was engaged in ginning and buying cotton, and that the Renshaws had no interest in the cotton and did not dispose of it. In support of this contention, the case of Johnson v. Armstrong, 83 Tex. 325, 18 S. W. 594, 29 Am. St. Rep. 648, is cited. There was testimony to the effect that L. W. and Wayne Renshaw were the parties actually in charge of the business of buying cotton for the ginning company, acting under the supervision of the general manager. There was also testimony in behalf of appellants to the effect that the greater part of the cotton purchased by them came to the market in names other than that of Mr. Terry. They knew, however, of plaintiff's levy upon the one bale on September 13, 1926, and of plaintiff's assertion of the landlord's lien and knew that the cotton purchased by them came from the farm cultivated by Terry, and acknowledged that they suspected that the cotton which came in the names of other parties was the Terry cotton. They also acknowledged that part of the proceeds of the cotton purchased by them was applied in discharge of individual indebtedness. So that, we think the evidence amply supports the trial court's finding, to the effect that the cotton was purchased and converted by appellants Renshaw. At all events, we think we must hold that appellants are personally responsible for the cotton purchased and converted by them, and upon which the plaintiff had a landlord's lien.

The case of Johnson v. Armstrong & Messer, 83 Tex. 325, 18 S. W. 594, 29 Am. St. Rep. 648, cited in behalf of appellant, is one in which the agent for a corporation made a contract in its behalf to prepare plans and specifications for a college building. The appellees, Armstrong and Messer, who prepared the plans and specifications, knew that they were for a school, college, or university building. Under such circumstances, the court said that: "If Johnson had a principal capable of being bound, and whom he had authority to bind by the contract, and if the contract was about the business of the principal and such facts were known to the plaintiffs, then, as Johnson did not expressly bind himself, it must be held to be the contract and debt of his principal, for which he is not responsible."

The case before us, however, is one sounding in tort. If the findings are to be credited, appellants knew the cotton to have been cultivated upon the Terry farm, and knew, or certainly had every reason to believe, that the plaintiff, Sullivan, had a lien thereon for the payment of his rent, and with knowledge thereof purchased and converted the cotton, and as such wrongdoers they were personally liable, regardless of their relation to the ginning company. In 38 Cyc. p. 2056, the rule is thus stated: "That defendant was acting as agent or servant of another when he wrongfully detained or disposed of plaintiff's goods is no defense, and it is immaterial whether he did so in ignorance of the owner's rights or in obedience to the command of his master or principal."

Appellants in their original brief, and in a supplemental brief later filed, insistently urge that the court erred in giving the following charge to the jury: "Gentlemen of the Jury: In connection with such issues in the charge as inquire or mention as to any alleged waiver of a lien by plaintiff on any crop or crops in question, you are instructed

that a waiver is defined in law to be an intentional relinquishment of a known right; and you will bear this definition in mind in answering all such issues as involve that matter."

It is insisted that: "The charge as submitted only partially defined the word in that it failed to tell the jury that a 'waiver' might be effected by acts and conduct of the plaintiff, as well as the intentional relinquishment of a known right."

We think we must overrule the contention thus presented. It is true there was evidence introduced to the effect that during the years preceding 1926 and a part of that year perhaps, the plaintiff freely permitted Terry to so market and deal with his cotton as to reasonably cause a purchaser to believe that no lien was asserted upon the cotton purchased. But there was no plea of estoppel on the part of appellants, and the court in submitting the issues of liability for the rents for the years 1925 and 1926, preceding the 13th day of September, 1926, instructed the jury with all the fullness that appellant insists upon, as will be seen by the following quotation submitted in connection with issue No. 2: "Were the manner and method of the plaintiff G. W. Sullivan, and the defendant L. M. Terry, in reference to the hauling to the gin and market, and the marketing of the crops raised on the premises of plaintiff by said Terry and the conduct of plaintiff in reference thereto, and the facts and circumstances in evidence, such as to reasonably indicate to the defendants Joe Wren and L. W. and Wayne Renshaw and induce them reasonably to believe that plaintiff had authorized said Luther Terry to sell said crop for the year 1925, and that he intended to waive his landlord's lien on said crop?"

A like charge was given relating to the purchase of any part of the crop of 1926 prior to plaintiff's levy of a distress warrant in that year. These issues were answered in favor of appellants. The same clause was also inserted in submitting the issue relating to the purchase of the cotton after the levy of the distress warrant, which the jury answered in the negative. It is thus seen that the issue of waiver or estoppel, whichever it may be termed, raised by the evidence, was submitted in terms as favorable to appellants as they had any right to insist upon; this being particularly true in view of the finding undoubtedly supported by the evidence that appellants knew that the plaintiff had not waived any lien upon that part of the crop of 1926 converted after the 13th day of September, 1926.

We find nothing else requiring notice, and conclude that the judgment as against appellants L. W. and Wayne Renshaw and J. W. Terry should be affirmed; but in so far as it was in favor of the defendants Joe Wren and R. J. Anderson, it is left undisturbed.