MEDENDORP *v.* WASHINGTON.

4-4077

Opinion delivered December 16, 1935.

*Oscar E. Williams,* for appellant.

*Compere & Compere,* for appellees.

SMITH, J. The testimony in the record before us develops the fact that appellant Mendendorp, who resides in Lonoke County, was the agent for a nonresident of the State, who owned a farm in Ashley County. He filed a suit as agent on April 29, 1929, for the purpose of collecting the rent for 1928. At that time all of the cotton had been sold, and the purpose of the suit was to hold

the purchasers of the cotton liable for the conversion of property which was subject to a landlord's lien, with knowledge of the lien. The court found the fact to be that "the persons who bought the cotton herein bought it in good faith and without knowledge of plaintiff's lien, and that there is no equity in the bill."

The case of *Van Etten* v. *Lesser-Goldman Cotton Company*, 158 Ark. 432, 250 S. W. 338, declares the law applicable to the issues here joined. We there said: "For the law is that, while one buying cotton subject to a landlord's lien is not liable as for conversion, if he has no knowledge of the lien, yet if the purchaser is in possession of facts sufficient to put him upon notice that the cotton is subject to the lien of a landlord, good faith requires him to pursue the inquiry to the extent of investigating the facts of which he has knowledge, and, if reasonable diligence in the investigation of these facts would have led to the knowledge of the actual existence of the lien, then the purchaser is liable for a conversion, just as he would have been had he possessed the actual knowledge. The act of purchasing the cotton destroys the landlord's lien, and one cannot do this and escape liability for so doing except when he has acted in good faith in making the purchase, and good faith requires a reasonable investigation of any information of which the purchaser has possession calculated to warn him that he is being offered cotton upon which there exists a landlord's lien." (Citing cases.)

Here the testimony shows that Medendorp brought Robert Washington to Ashley County in 1925, and placed him in possession of the farm. It appears that this was done under a rental contract covering the entire farm, portions of which Washington subrented to other tenants. Washington's possession, which began in 1925, continued through 1928. The farm was near Wilmot, and Medendorp testified that he would come down there about Christmas for the purpose of collecting the rent from his tenant and of making settlement of the year's operations. During this time, the impression became general, as is evidenced by the testimony of a large number of witnesses, that Washington was the general manager of the

farm. For instance, R. C. Wells, a merchant at Wilmot, testified that Washington carried an account with him which was charged to Medendorp, and on one occasion prior to 1928, Washington came to him and told him he had sold his cotton and wanted to pay Medendorp's account, and he did so.

Defendants, W. B. de Yampert and McDermott and Son, bought a portion of the cotton grown on the farm in 1928, and this appeal presents the question of their liability for the value of this cotton. There were other defendants named in the original complaint, but they appear to have passed out of the case.

De Yampert testified that he had known Washington during the years 1925 to 1928, and he always understood that Washington was the manager of the farm. "He acted as one of authority by making trades, buying and selling farm products, purchasing mules and other equipment for a plantation. I had no information that he was renting the place. He was recognized as the agent with full authority to act."

Defendant E. O. McDermott, of the firm of McDermott and Son, testified that he had bought cotton from Washington for several years and considered him the manager of the farm. He further testified: "Medendorp nor any one else ever during those four years gave me any information or idea whether or not Washington was renting this land from any one. 'I had no idea at the time I bought this cotton from Washington that he was a tenant, and due to pay any rent to any one from this place.' 'I did not, but to the contrary, having bought from him the year before, thought he had the right to sell me the cotton'."

Harry McDermott, a member of the defendant firm of McDermott and Son, testified in part as follows: "He (Washington) was the only one I ever saw show any authority about selling the cotton, buying the merchandise for the place. I had bought cotton from him the preceding years. I never had any information that Washington was renting that land from the owner up to the time I bought the cotton. He was generally recog-

nized in the neighborhood as manager of that place. Medendorp nor Diebold ever intimated to me that Robert Washington did not have authority to sell the cotton from the place before I bought the cotton in 1928.''

There was other testimony corroborative of this, but we will not protract the opinion by reciting it. This testimony supports the finding that Washington had sold cotton in the open market, produced on the farm prior to 1928, and that his authority so to do had not been questioned. The court was therefore justified in finding, as was found, under the authority of the Van Etten case, *supra,* that appellees had purchased the cotton, for the value of which they are sued, in the open market and without knowledge of the landlord's lien, or of facts sufficient to impose upon them the requirement of making inquiry concerning the lien.

The decree is correct, and is therefore affirmed.