Puckett et al. vs. Reed et al.

PUCKETT et al. vs. REED et al.

1. LANDLORD'S LIEN: *Purchase without notice, etc.*

One who purchases cotton grown on demised premises, after the same has been removed by the tenant to a gin, and without notice of the landlord's lien, takes it discharged of the lien.

2. SALE: *Symbolical delivery.*

A sale of personal property may be completed and the title pass, as to third parties, without actual delivery, when, from the nature or situation of the property, actual delivery is impracticable.

3. ————: *Same.*

The delivery to a purchaser of a ginner's receipt for cotton, which stipulated that the same was to be ginned, baled, etc., and delivered to the holder of the receipt, was a symbolical delivery of the cotton, and passed title to the purchaser free from a landlord's lien for rent, of which he had no notice.

APPEAL from *Independence* Circuit Court.

Hon. W. B. PADGETT, Special Judge.

*J. M. Moore*, for appellant.

*U. M. Rose*, for appellees.

ENGLISH, CH. J.:

It appears that A. B. Harris rented his farm in Harris' bottom, on White River, Izard County, for the year 1871, to William Riley and others, for a stipulated rent, to be paid in cotton and corn; that on the 27th November, 1871, Riley, one of his tenants, removed from the farm to the gin or warehouse of A. & A. Jeffery & Co., at Mount Olive, 1,742 pounds of seed cotton grown on the leased premises. On the 11th December, 1871, Harris sued William Riley and the other tenants before a justice of the peace of Izard County, and, upon affidavit, bond, etc., obtained an attachment to enforce his lien as landlord against the crops of the tenants remaining on the farm, and particularly against the seed cotton removed to the gin or warehouse of A. & A. Jeffery & Co. On the day of the issuance of the attachment

(11th December, 1871), the constable levied upon the 1,742 pounds of seed cotton at the warehouse (as stated in the return) of A. & A. Jeffery & Co., and also on cotton and corn remaining on the farm of plaintiffs. On the 15th January, 1872, there was a trial and judgment against the defendants in the attachment suit, and, it seems, an order for the sale of the property attached. The defendants took no appeal.

On the 20th of January, 1872, Reed & Co., merchants of Batesville, interpleaded for the 1,742 pounds of seed cotton attached at the gin of Jeffery & Co., claiming to have purchased the cotton from William Riley before it was attached. There was a trial upon the interplea before the justice of the peace 20th January, 1872, and verdict and judgment in favor of Harris.

Reed & Co. appealed to the Circuit Court, where they were permitted to amend their complaint; the death of Harris was suggested, Pleasant J. Puckett, his administrator, substituted as a party, and, by consent, the cause was removed to the Circuit Court of Independence County. There the cause was tried before the court, finding and judgment in favor of the interpleaders, motion for new trial overruled, bill of exceptions, and appeal to this court by the administrator of Harris.

In the original interplea, or complaint, as it is styled in the record, the appellees alleged that, on the 6th of December, 1871, and before the issuance of the attachment, they purchased the cotton of William Riley, and he delivered to them the receipt of A. & A. Jeffery & Co. therefor. In the amended complaint they alleged that at the time they purchased the cotton of Riley, they had no notice, actual or constructive, that Harris had, or claimed to have, a lien thereon for rents or otherwise.

The receipt of Jeffery & Co., which was made an exhibit to the interplea, and read in evidence on the trial, follows:

"MOUNT OLIVE, ARK., Nov. 27th, 1871.

"Received of William Riley seventeen hundred and forty-two (1,742) lbs. seed cotton, to be ginned and baled for toll, and delivered to the holder of this receipt.

"A. & A. JEFFERY & Co."

Isaac N. Reed, a member of the firm of Reed & Co., (composed of Charles P. Burr and himself) testified on the trial that on the 6th day of November, 1871, he purchased of William Riley 1,742 pounds of seed cotton, at four cents per pound, and paid him half in goods and half in money, and that Riley delivered to him the cotton receipt of A. & A. Jeffrey & Co., the ginners having the cotton, and which he knew to be in their handwriting, that he was particular to inquire of Riley if there was any lien or claim on the cotton, and he informed him that there was none. Witness was also permitted to testify, against the objection of appellant, that he had been engaged in the mercantile business in Batesville ever since the year 1865, and was well acquainted with the usage and custom of merchants at that place as to ginner's receipts for cotton; that the purchaser of cotton by the ginner's receipt was usual and customary with the merchants, and had ever been the custom so far as he knew. He had theretofore bought cotton by receipt in Izard County.

The appellees were then permitted to read in evidence the receipt copied above, against the objection of appellant.

Robert Neill testified that he was present when appellees purchased the cotton of Riley, on the 6th December, 1874, and paid him therefor four cents per pound, amounting to $69.68; that full payment was made at the time. Witness handed Riley the cash that was paid on the trade, being about one half of the price agreed upon. He was book-keeper for appellees at the time of the purchase, and knew the receipt of A. & A. Jeffery & Co., which Riley then had, to be in the hand-writing of one of the firm, and so told Reed.

He was also permitted to testify, against the objection of appellant, that he was in the mercantile business at Batesville in the years 1868–9–70–71, and well acquainted with the custom of merchants and ginners in the county of Independence, and adjoining counties of Izard and Sharp, and it was the general custom for ginners to give persons delivering cotton to them receipts similar to the one given by Jeffery & Co. to Riley in this case: and for merchants to buy the cotton and take the receipts from the holder, and then look to the ginner for the cotton. This custom was very generally practiced and agreed to by parties concerned. While in the mercantile business he had frequently bought cotton receipts on gins in Izard County, and received the cotton. Did not know that the custom applied in other counties than those named.

Edwin T. Burr was permitted to testify, against the objection of appellant, that he had been a citizen of Batesville for thirty years, and that for about twenty-five years of that time it had been the custom of merchants to purchase cotton receipts at Batesville and in Jackson County; that he did not know whether the custom existed in Izard County or not; that he had bought cotton receipts from parties living in Izard County.

It seems that there was a written contract of lease between Harris and Riley and others, defendants in the attachment, which was at some time among the papers of the court, but could not be found at the trial; but two witnesses, who had seen the contract, testified that it was substantially as stated by Harris in his affidavit for attachment; and it may be assumed that appellant proved that Harris had a landlord's lien on the cotton at the time appellees purchased it of Riley, one of his tenants.

The appellant moved the court to declare the law to be, "That the delivery of the ginners' receipt for the cotton in controversy does not pass the title to the property in the cotton to the

interpleaders, so as to vest the property in them as against the landlord's lien."

The court refused so to declare the law, and found the cotton in controversy to be the property of the interpleaders.

*First*—The statute gives the landlord a lien upon the demised premises, and provides a mode for him to enforce it by attachment. Digest, secs. 4098–4104. Section 4103 provides that "Such writ of attachment may be levied on the crop in the possession of the tenant, or any one holding in his right, or in possession of a purchaser from him with notice of the lien of the landlord."

If the cotton in controversy had been upon the demised premises at the time the appellees purchased it of Riley, the tenant of Harris, possibly this fact might have been sufficient to put them on inquiry as to the landlord's lien, and charge them with notice. But be this as it may, it appears that, before they purchased the cotton, it had been removed from the farm of Harris to the gin or warehouse of Jeffery & Co., and Reed, one of the appellees, testified that, at the time he purchased the cotton of Riley, he had no notice of the lien of Harris, and there was no evidence to the contrary. The purchase having been made before the issuance of the attachment, and without notice of the landlord's lien, the appellees took it discharged of the lien, if, by the facts in evidence, the sale was complete so as to vest the title in them before the cotton was attached.

*Second*—It was proven on the trial that appellees purchased the cotton of Riley and paid him for it, and he delivered to them the receipt of the ginners, in whose possession the cotton then was.

Upon these facts the court below, in effect, refused to declare the law to be that the sale to the appellees was incomplete, and found that the title to the cotton was in them.

It is the general rule of the common law relative to sales of personal property that, by the mere contract of sale, the property in the thing sold passes to the purchaser, yet he has no right of possession if the goods be not paid for and no credit were agreed upon. Therefore, he cannot take them, nor sue for their non-delivery until the price be paid or tendered by him. *Magee* v. *Billingsly,* 3 Ala., 690 ; 2 Kent, 492.

The common law rule, however, was changed by the 17th section of the English statute of frauds, which was similar to our statute, which provides that "No contract for the sale of goods, wares or merchandise, for the price of thirty dollars or upwards, shall be binding on the parties unless, first, there be some note or memorandum signed by the party to be charged ; or, second, the purchaser shall accept a part of the goods so sold, and actually receive the same ; or, third, shall give something in earnest to bind the bargain, or in part payment thereof." Gantt's Digest, sec. 2952.

In this case the appellees paid Riley the full price of the cotton at the time of the contract of purchase, and, as between them, the contract was complete. The appellees could have recovered the cotton of the ginners had they refused to deliver it to them on presentation of their receipt, and payment or tender of any charges due to them. ·

But, on the facts proven, was the sale complete as against Harris, the attaching creditor?

In the sale of personal property, the delivery of the thing sold is necessary as against every one but the vendee; as to him, the title passes without delivery. Where the vendor remains in possession of the goods after sale, it is a badge of fraud as against creditors, etc., though in this State not fraud *per se*. *Field* v. *Simco,* 7 Ark., 269.

When the goods are so situated as to admit of no delivery, the sale will be valid without it. *Ricker* v. *Cross,* 5 New Hamp.,

570. Where the articles sold are ponderous, a symbolical or constructive delivery will be equivalent in its effect to an actual one. So, where goods sold are in a warehouse, the delivery of the key has been deemed sufficient. *Vining* v. *Gilluth*, 39 Maine, 496.

In *Adams* v. *Foley et al.*, 4 Clarke (Iowa), 52, held, that where goods are left with a warehouseman, who gives his receipt for the same, the sale of the goods and the assignment of the warehouse receipt and delivery of it to the purchaser, was a valid delivery of the goods as against attaching creditors, though there had been no notice to the warehouseman or the creditors, of the sale and assignment of the receipt prior to the levy.

There is a similar ruling in *Gibson* v. *Stevens*, 8 Howard, U.S. 384.

See, also, *Meeker et al.* v. *Vredurburg et al.*, 15 La., An. 438.

Five hogsheads of sugar lying on the wharf at St. Louis were purchased by Sample ; Held, that a delivery to the purchaser of the city weigher's certificate, and a bill of the price, constituted a sufficient delivery of the sugar. *Glasgow et al.* v. *Nickolson*, 25 Mo., 29.

A sale of cotton may be made and evidenced by the assignment or delivery of the ginner's receipt. *Waller* v. *Parker*, 5 Caldwell (Tenn.), 476: 29 U.S. Digest, p. 563, sec. 11.

In *Ricker et al.* v. *Cross*, 5 New Hamp., 570, Whitehouse, being the owner of a chaise and harness, and various other articles of personal property, and being indebted to the plaintiffs, transferred the same to the plaintiffs for their benefit as creditors. Previous to the time of the transfer the chaise and harness had been let for hire, and were at the time in the possession of the hirer at a distance, but the rest of the property was delivered to the plaintiffs in the name of the whole. After such transfer and delivery, but before plaintiffs obtained actual possession of the chaise and harness, they were attached by creditors of Whitehouse, while in possession of the hirer, on his way to the place

where he had hired them:   Held, that the plaintiffs were entitled to recover the chaise and harness as against the attaching
creditors.   The court, after noticing the general rule that there
must be a delivery of the goods as to creditors, etc., said:
"Where the chattels sold are so situated that there can be no
delivery at the time of the sale, the case forms an exception to
the general rule, and it is sufficient if the vendee, without any
gross laches, take possession and assert his title in a reasonable
time after he has an opportunity to take possession."

In this case the vendor was not in actual possession of the
cotton at the time of the sale.   It was in the gin or warehouse
of Jeffery & Co., his bailees, in Izard County.   The sale was
made at Batesville, Independence County; and the ginners' receipt delivered to appellees on the 6th of December, and the
cotton was attached on the 11th.   There is no proof that the
appellees had presented the receipt to the ginners, or notified
them of their purchase, before the cotton was attached, but the
delay, under the circumstances, does not seem unreasonable, or
to indicate fraud.   In *Gibson* v. *Stevens*, 8 How., U.S., 401, the
court said:   "It appears that the attachment was laid before the
warehouseman received notice of the transfer to Gibson.   Undoubtedly it was his duty to use reasonable diligence in giving
notice to them, etc.   And negligence in this respect on his part
would be regarded as evidence of fraud, and might, moreover,
put in jeopardy his right of property if it passed into the hands
of a *bona fide* purchaser without notice, and in the usual course
of trade.   But in this case there has been no unreasonable
delay.   The notice was promptly given, and the receipt of
it by the bailees was not necessary to complete his title.   As between him and the creditors of McQueen & McKay (of whom
Gibson purchased) the property and possession vested in him at
the time of the transfer and delivery of the documents."

In *Smith* v. *Pickett*, 7 Ga., 104, Hardwick stored five bales of cotton in the warehouse of Smith & Co., and took a receipt from them which entitled the holder to receive the cotton. Pickett sued out an attachment against Hardwick, and served a member of the firm of Smith & Co. with a garnishment. After the service Hardwick transferred the receipt to Ridgell, who presented it to Smith & Co., and the cotton was delivered to him: Held, that the garnishee was liable, the receipt having been transferred and he having delivered the cotton to the holder after the service of the garnishment.

No doubt if Hardwick had sold the cotton to Ridgell and delivered to him the receipt of Smith & Co. before the service of the garnishment, the decision would have been against the attaching creditor.

By the terms of the receipt given by Jeffery & Co. to Riley, the cotton was to be delivered to the holder of the receipt. Though such instrument is not negotiable in the sense that bills, notes, etc., are negotiable by the law merchant, yet it was the evidence of Riley's title to the cotton in the hands of his bailees, and when he sold the cotton to appellees, and delivered the receipt to them, it was a symbolical delivery of the cotton to them—the only delivery that could have been made at the time and place of sale.

Nothing remained to be done to complete the sale. The receipt specified the number of pounds of cotton, and the appellees paid Riley four cents per pound for it.

If Jeffery & Co. had any charge upon the cotton, that was a matter between them and appellees, which did not concern the attaching creditor.

Other rulings were made by the court below which are complained of by the appellant, and some of them may have been erroneous, but the judgment, being right upon the whole record, must be affirmed.