## MAY *v.* McGaughey.

### Opinion delivered March 16, 1895.

1. *Landlord's lien—Innocent purchaser.*
   A landlord, by consenting to the removal and sale of a crop of cotton upon which he has a lien for rents, loses his lien as against one purchasing the cotton, or advancing money upon it as a security, in good faith and without notice of such lien.

2. *Factor—Lien for advances.*
   A cotton factor who has in good faith advanced money upon delivery of a bill of lading for cotton shipped to him by his principal is an innocent purchaser, and entitled to hold the cotton as a pledge for the amount of such advance.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

#### STATEMENT BY THE COURT.

The facts in this case are as follows: One Wyatt was a tenant of the appellees, H. C. McGaughey *et al.*, during the year 1886, and they held his note for the sum of $810 for rent. Wyatt raised a crop on land of appellees, and, in order to obtain supplies for his use during the year, he mortgaged his crop to C. M. Neel. When the crop was matured, Wyatt gathered seventeen bales of cotton, and delivered them to Neel, in part payment of debt to him. Neel knew that the rent had not been paid, and, in order to arrange that matter, he had a talk with Wyatt and McGaughey. H. C. McGaughey, who seems to have acted for himself and the other appellees, agreed

with Neel that if he would pay $300 of the rent, he would wait with him about two weeks for the remainder. Neel paid McGaughey the $300, and gave him his acceptance for $510, due the 15th of November, 1886.

At the time this transaction was had the cotton was already in the possession of Neel. After this, on November 5, 1886, Neel delivered the cotton to the St. L., A. & T. Ry. Co., to be transported to Richardson & May, at New Orleans, La. He received a bill of lading, in which he was named as consignor and Richardson & May as consignees. He attached this bill of lading to a draft on Richardson & May, the consignees, for an amount equal to the value of the cotton, and forwarded the same for collection. The bill of lading was received and the draft paid by Richardson & May on the 8th day of November, 1886, while the cotton was yet in the hands of the railway company, awaiting transportation to them, and without any notice on their part of the landlord's lien. Neel failed in business about the 14th of November, 1886, and this cotton was attached by certain of his creditors as his property. Both the appellant and the appellees intervened. The appellant, as surviving partner of the firm of Richardson & May, claimed the right to hold the cotton for the payment of the amount advanced Neel on the bill of lading therefor. The appellees asserted that they had a lien on the cotton for the portion of the rent not paid. The decision of the chancellor was in favor of the appellees.

*Rose, Hemingway & Rose* and *Austin & Taylor* for appellant.

1. By the arrangement made by McGaughey with Neel, he released his lien. It was clearly a novation. 1 Parsons, Cont. 219 ; 9 Ark. 233 ; 37 Ark. 282 ; 2 Whart. Cont. sec. 854 ; 16 A. & E. Enc. Law, p. 868, note. By

consenting to the sale of the crop to Neel, the landlord waived his lien. 1 Jones, Liens, sec. 579.

2. Even conceding McGaughey's lien, he could not pursue the cotton against Richardson & May, who bought of Neel *without any notice of the lien.* 2 Jones on Liens, sec. 578; Sand. & H. Dig. sec. 4804; 31 Ark. 131; 52 *id.* 158. Delivery to the carrier was delivery to the consignee. 44 Ark. 556; 53 *id.* 200. Neel was an accommodation drawer, and the paper could not be the foundation of a suit by McGaughey against him. Tied. Com. Paper, sec. 158. May's title could not be litigated in a suit between McGaughey and Wyatt, as he was not a party. Bigelow, Est. p. 142.

*J. M. & J. G. Taylor* for appellee.

The taking of Neel's draft as collateral to the rent note did not release the lien. The cotton was at the depot awaiting shipment; it had not been delivered to Richardson & May; they had not purchased it; it was simply consigned to them by an ordinary bill of lading, upon which they made advances to Neel. Neel had notice of the lien. It was not a sale to Neel by McGaughey, for his draft was not paid. In some respects this case is like 34 Ark. 693. The fact that the landlord got part of the purchase price of the cotton was not a waiver of his lien. McGaughey never consented to anything more than a delivery of the cotton to Neel by Wyatt, taking his acceptance as collateral for balance of the rent note, the lien remaining intact. Richardson & May were not innocent purchasers. They were mere pledgees, and took subject to existing liens. (These transactions occurred prior to the act of 1887. Sand. &. H. Dig., sec. 504, etc.) 44 Ark. 301; 56 *id.* 263; 101 U. S. 565. Neel still remained the owner of the cotton, with notice of the lien. 45 A. & E. R. Cases, p. 401; Sand. & H. Dig. secs. 4804, 4798.

1. Waiver of
landlord's
lien.

RIDDICK, J., (after stating the facts.) The only question before us is whether the appellees have, as against Richardson & May, the consignees, a lien on the cotton for their rent. To determine this question, we need only look to the evidence to see whether the appellees consented that Neel might ship the cotton. If so, they have no lien against any one purchasing the cotton from Neel, or advancing money upon it as a security, in good faith, and without notice of the landlord's lien. *Puckett* v. *Reed*, 31 Ark. 131; *Bledsoe* v. *Mitchell*, 52 *id.* 158; 1 Jones, Liens, sec. 579. On this point there seems to us to be little if any conflict in the testimony. Three persons were present at the time McGaughey agreed with Neel to wait two weeks for the payment of the remainder of the rent. Of these three, Wyatt and Neel, though they do not testify that any express authority was given Neel to ship the cotton, yet, both, in effect, say that the object they had in view in making the arrangement with McGaughey was to enable Neel to ship the cotton, and that it was understood by all parties that Neel would ship the cotton. McGaughey in his testimony almost admits this. After saying that Wyatt informed him that he had delivered the cotton in controversy to Neel, and requested witness to go with him to see Neel, that the rent might be arranged, he testified that, upon Neel's paying a portion of the rent, he agreed to wait on him ten or fifteen days for the payment of the remainder of the rent. He was then examined touching the understanding of the parties as to whether or not Neel should ship the cotton. The following are some of the questions asked him on this point, and the answers he gave thereto: "What did you expect would be done with the cotton after you took Mr. Neel's acceptance?" Ans. "I thought possibly he might ship it, for all I knew." Q. "Were you willing for him to ship it?" Ans. "Nothing was said about

it." Q. "Didn't you know that Mr. Neel was going to ship or sell that cotton?" Ans. "I suppose I might have known it, if I had thought about it. I never thought about it at the time." * * * * * Q. By his own counsel : "I understand you, then, to say that nothing was said or done about the cotton, except that you knew Mr. Neel had got the cotton, and perhaps intended to sell it in the regular course of his business." Ans. "Yes, sir. I never thought about it, but I supposed he would." Q. "But whatever he did with it, you released no lien that you held on it, but said nothing to him about it, but you told Wyatt that you would not release it." Ans. "Yes, sir."

The cotton was already at the railroad station when the extension of time for the payment of the balance of rent was granted by McGaughey. From the testimony of McGaughey alone, we can have no doubt that all the parties to this transaction understood that the cotton was then in the possession of Neel, and that he would ship and sell it in the ordinary course of his business, unless McGaughey objected. As no objection was made by McGaughey, we can come to no other conclusion than that he consented to the shipment and sale of the cotton by Neel.

McGaughey was not the owner of the cotton. The cotton had been grown by Wyatt, who had sold and delivered it to Neel subject to the landlord's lien for rent. With the exception that the landlord held a lien on the cotton for the payment of the rent, Neel had a perfect title to the cotton. The landlord having consented to the shipment, Neel delivered the cotton to the railway company for that purpose, and procured a bill of lading in which Richardson & May were named as consignees. By forwarding this bill of lading to them, he obtained an advance of money thereon equal to the full value of the cotton.

2. Factor's
lien for ad-
vances.  By the common law, a factor and commission mer-
chant has a lien upon the goods of his principal in his
hands as security for all advances made to such princi-
pal, in connection with the goods consigned.  1 Jones,
Liens, 418.  Richardson & May had no notice of the
landlord's lien, and the delivery of the bill of lading for
the purpose of securing the advance made by them was
in effect a delivery and pledge of the cotton to them
for the amount of such advance.  *Burton* v. *Baird*, 44
Ark. 556; *Lumber Co.* v. *Hardware Co.* 53 Ark. 198.
To the extent of that advance, they were in the same
position as innocent purchasers, and their rights were
superior to those of the landlord.

We have not overlooked section 4798 of Sand. & H.
Dig., but if the words "or other bailee" in that section
includes common carriers, still it can have no application
to a case like this where the landlord consents to the
shipment and sale of cotton.

We therefore conclude that the chancellor erred in
his finding and decree against the appellant.  His de-
cree is therefore reversed, and the cause remanded, with
an order that the petition of appellees be dismissed, and
that the appellant have a judgment for his costs.