Jean A. HOLMES, Executrix, et al *v.*
RICELAND FOODS, Inc., et al

76-230             546 S.W. 2d 414

Opinion Delivered February 7, 1977
(In Banc)
[Rehearing denied March 7, 1977.]

*Cecil B. Nance Jr. of Nance, Nance, Fleming & Wood,* for appellants.

*Arthur R. Macom,* of *Macom, Moorhead & Green,* and *Julian B. Fogleman,* of *Hale, Fogleman & Rogers,* for appellees.

GEORGE ROSE SMITH, Justice. In April, 1971, the appellants, as landlords, rented about 4,000 acres of farmland in Crittenden and Cross counties to Frank and Louis Alpe and Alpe Farms, Inc. The lease, to run for the rest of the calendar year, was for a cash rental of $59,560,

payable November 15, 1971. The Alpes were members of Riceland Foods, Inc., an agricultural co-operative. In the fall the crops—rice and soybeans—were sold by the Alpes to Riceland and its affiliated association. Riceland made the purchase-money checks payable to the Alpes and to the Farmers Home Administration, which held a recorded security agreement to secure its advances to the Alpes for making the crop.

The Alpes paid only about $16,000 upon the rent, leaving a deficit of almost $43,000. This suit for that amount was brought by the landowners against the Alpes and also against Riceland, on the theory that Riceland had paid for the crops without making any provision for the satisfaction of the plaintiffs' statutory landlord's lien. Ark. Stat. Ann. § 51-201 (Repl. 1971). The chancellor entered judgment against the Alpes, but held that the landlords, by their conduct in prior years, had waived their lien as far as Riceland is concerned.

It is settled, of couse, that if a tenant sells the crop to a purchaser without notice of the landlord's lien, the buyer takes title free of the lien. *Van Etten* v. *Lesser-Goldman Cotton Co.*, 158 Ark. 432, 250 S.W. 338 (1923); *Puckett* v. *Reed*, 31 Ark. 131 (1876). Here, however, it cannot be—and indeed is not—seriously contended that Riceland had no notice that the crops had been grown by the Alpes as tenants. Louis Alpe testified that he so informed Riceland. Moreover, attached to the FHA security agreement were waivers by which the various landlords to some extent subordinated their liens to the FHA's advances. Riceland checked the records every year in June or July to discover liens against its members. Presumably the FHA's security agreement, with the attached subordination forms, was known to Riceland, as it included FHA in its purchase-money checks. Riceland's officers testified candidly that they seldom made any inquiry about landlord's liens: "That's really none of our business." Under our reasoning in *Merchants & Planters Bank* v. *Meyer*, 56 Ark. 499, 20 S.W. 406 (1892), Riceland had more than sufficient information to require it to make a reasonable inquiry, which would have disclosed the landlord-tenant relationship.

Riceland argues, however, that the appellants waived their lien. The essential facts are not in dispute. The appellants, two sisters who live in Tennessee, inherited the land. The Alpes were their tenants for some five years, ending in 1971. In 1967 and 1968 no rent was due, as the Alpes cleared land in lieu of paying rent. In 1969 the rent was paid in full. In 1970 all except a small carry-over of about $900 was paid. The fifth year is the one now in issue.

On cross-examination the appellant Jean Holmes, who is an attorney and acted for herself and her sister, testified that she never gave the Alpes any instructions about how, when, or where to sell the crops. She did not ask the Alpes to have the purchase money made payable jointly. She assumed, and can be found to have known, that the crops were being sold to Riceland, but she never gave Riceland any notice of her claim, as landlord. The appellees rely primarily upon Missouri, Mississippi, and Texas cases in arguing that Mrs. Holmes's conduct had the effect of waiving the lien.

We cannot accept that view. It must be remembered that the Alpes, as tenants renting the land for cash, were the owners of the crops and had the right to sell them. *Barnhardt* v. *State*, 169 Ark. 567, 275 S.W. 909 (1925); *Robinson* v. *Kruse*, 29 Ark. 575 (1874). In this respect the situation differs from that of a sharecropping arrangement, under which the landowner has the title to the crop and is entitled to market it.

The question naturally arises: What did Mrs. Holmes do in 1969 and 1970 that indicated any intention to waive her lien, either then or in a later year? The Alpes had the absolute right to sell the crops. They did so. They paid the rent. No action on the part of Mrs. Holmes was demanded. No occasion arose (except possibly as to the $900 carry-over) that would even have *enabled* her to assert her lien, much less *require* her to do so; so what significance can be attached to her conduct? Certainly Riceland was not misled, for its fixed policy was to pay no attention to the possibility that produce brought to it by its members might be subject to a landlord's lien. There was no burden on Mrs. Holmes to inform possible purchasers in the two

counties of her lien. We have said that "one will not be held to have waived a lien unless the intent be express or very plain and clear. The presumption is always against it." *Blackwood* v. *Farmers Bank & Tr. Co.*, 200 Ark. 738, 141 S.W. 2d 1 (1940). As we have seen, Riceland was unquestionably on notice that the lien existed. We can find no basis for saying that Riceland was entitled to ignore it.

We do not overlook our holding in *Planters Production Credit Assn.* v. *Bowles*, 256 Ark. 1063, 511 S.W. 2d 645 (1974), where we agreed with Iowa and New Mexico decisions to the effect that a credit association's policy of allowing its members to sell their crops at will waived the association's security interest. Our holding, however, was immediately set aside by an amendment to the Uniform Commercial Code, Ark. Stat. Ann. § 85-9-306 (2) (Supp. 1975), which decidedly impairs the strength of *Planters* as a precedent.

Reversed.

FOGLEMAN, J., not participating.

HARRIS, C.J., dissents.