2009 Ark. 520

**RICELAND FOODS, INC., Appellant,**

v.

**Randy PEARSON, and Carolyn Walker, Co–Trustees of the Moore Inter Vivos Trust, and Bob Burress, Appellees/Cross–Appellants,**

v.

**St. Francis County Farmers Association and Riceland Foods, Inc., Cross–Appellees.**

No. 08–999.

Supreme Court of Arkansas.

Oct. 29, 2009.

Rehearing Denied Dec. 10, 2009.

[black bar]

---

Barrett & Deacon, A Professional Association, by: Ralph W. Waddell, and Brandon J. Harrison, Jonesboro, for appellant Riceland Foods, Inc.

Fogleman & Rogers, by: Joe M. Rogers, West Memphis, for appellees/cross-appellants Randy Pearson & Carolyn Walker, Co-trustees of the Moore Inter Vivos Trust.

John D. Bridgforth, P.A., by: John D. Bridgforth, Forrest City, for cross-appellee St. Francis County Farmers Association.

JIM HANNAH, Chief Justice.

This appeal requires us to consider whether, pursuant to Arkansas's landlord-lien statute, Arkansas Code Annotated section 18–41–101 (Repl.2003), a purchaser of crops has a duty to make a reasonable investigation or inquiry as to whether the seller of crops is a tenant or owner of the farmland on which the crops were produced. The cross-appeal concerns attorneys' fees and the application of a setoff.

Appellant Riceland Foods, Inc., appeals the circuit court's order holding Riceland liable for rent that tenant Bob Burress did not pay, under a farm lease that Burress entered into with appellees Randy Pearson and Carolyn Walker, co-trustees of the Moore Inter Vivos Trust ("the Trust"). Riceland contends that the circuit court erred as a matter of fact and law when, pursuant to section 18–41–101, it entered judgment against Riceland. Riceland claims that the Trust's statutory lien is not enforceable against Riceland because Riceland bought rice from Burress in good faith and without notice that Burress was a tenant who had failed to pay rent to the Trust. Riceland also claims that the circuit court erred when it entered judgment against Riceland and required Riceland to satisfy the judgment before separate appellant St. Francis County Farmers Association ("SFCFA") did so.

On cross-appeal, the Trust contends that the circuit court erred in failing to award the Trust reasonable attorneys' fees against Riceland and SFCFA. The Trust further contends that the circuit court erred when it granted Riceland and SFCFA a setoff for a settlement paid by Cargill, Inc., a former party to the suit.

We assumed jurisdiction of this case because it involves a substantial question of law concerning the interpretation of an act of the General Assembly. Thus, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(6) (2009). We reverse and remand on direct appeal and affirm on cross-appeal.

The Trust leased 1138 acres of farmland it owned in St. Francis County to Bob Burress, for a period of five years commencing in 2005 for cash rent of $95,550 per year. Burress did not pay $57,330 of the rent for the crop year 2005 that was due on January 10, 2006. The Trust brought suit against Burress, SFCFA, Riceland, and Cargill. The Trust sought judgment for the unpaid rent against tenant Burress and secured creditor, SFCFA, which financed Burress's crop and had obtained proceeds from the crop. In addition, the Trust sought judgment from Riceland and Cargill, because they had purchased all the rice and soybeans grown on the Trust's land and paid the proceeds to Burress and SFCFA.

In an amended complaint, the Trust also sought attorneys' fees and costs. Burress filed a counterclaim against the Trust, and

the Trust filed a second amended complaint against Burress seeking damages for his farming methods.

The circuit court bifurcated the lien and rent issues from the rest of the case. The court convened a jury trial, and the jury returned a verdict against Burress in the amount of $4125 for "other elements of damage." Prior to trial, the Trust settled its claim against Cargill, so the claims against Cargill were dismissed with prejudice.

The circuit court, sitting as trier of fact on equity matters, ordered

That plaintiff recover judgment from defendant, Bob Burress, in the sum of $4,125 plus interest thereon at the rate of ten percent (10%) per annum from entry of judgment until paid and defendant, Bob Burress's counterclaim against plaintiff be and is dismissed with prejudice;

That plaintiff recover judgment from the defendant, Bob Burress, for $57,330 plus interest thereon from January 10, 2006 until entry of judgment at the rate of 10.25% per annum, and post judgment interest on $57,330 plus accrued interest less $2500 credit for settlement paid by Cargill, Inc. to plaintiff from date of entry of judgment until paid at the rate of 10% per annum until paid, together with attorney's fees of $14,000 plus costs of $3,517.19, which shall also accrue interest at the rate of 10% per annum from entry of judgment until paid, for all of which execution may issue;

That if the defendant, Bob Burress, does not pay the judgment for rent owing of $57,330 less credit of $2500 plus interest on $57,330 at the rate of 10.25% per annum from January 10, 2006 until en-try of judgment, less credit from $2500 paid by the ⌊₄defendant, Cargill, Inc., to plaintiff plus post judgment interest on such sums until paid at the rate of 10% per annum, for all of which execution may issue;

That if the defendant, Bob Burress, does not pay the sums awarded against him herein within ten (10) days from the date of entry of judgment herein, excluding the $4,125 awarded to plaintiff against defendant, Burress, and the award of attorney's fees and cost to plaintiff against defendant Burress, or if defendant, Riceland Foods, Inc., does not pay the sums awarded against it herein within ten (10) days after entry of judgment, then plaintiff is entitled to judgment against defendant, St. Francis Farmers Association for $57,330 plus pre-judgment interest at the rate of 6% per annum from January 10, 2006 until entry of judgment, less credit for $2500 paid by the defendant, Cargill, Inc., to plaintiff, plus post judgment interest on such sums until paid, for all of which execution may issue.

Subsequent to these findings, SFCFA paid the Trust certain monies and received from the Trust a satisfaction of judgment and release of all claims. Riceland appeals, and the Trust cross-appeals against Riceland and SFCFA.[1]

## I.  Direct Appeal

### A.  Mootness

■ Before addressing the merits of Riceland's arguments, we must determine whether this appeal is moot. On appeal, Riceland claims that this court should reverse and vacate the circuit court's judgment requiring it to pay approximately

---

1.  The Trust filed a motion to dismiss its cross-appeal against Burress. The court of appeals granted the Trust's motion on June 8, 2009.

$57,000 to the Trust if the judgment was not first satisfied by Burress. Although Burress did not satisfy the judgment, SFCFA has done so regarding the landlord-lien issues that affected Riceland. Riceland contends that this satisfaction does not, however, moot this appeal because the satisfaction and release of claims is expressly restricted to SFCFA and because Riceland now faces potential contribution or indemnity claims from SFCFA based on the joint judgment that placed Riceland ahead of SFCFA on the liability scale. Indeed, SFCFA has stated in its brief on appeal that, depending on the outcome of this case, it will enforce its rights of contribution and indemnity against Riceland.

As a general rule, the appellate courts of this state will not review issues that are moot. *Cotten v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001). To do so would be to render advisory opinions, which this court will not do. *Id.* We have generally held that a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.* In other words, a moot case presents no justiciable issue for determination by the court. *Shipp v. Franklin*, 370 Ark. 262, 258 S.W.3d 744 (2007). Here, our judgment in this case would have a practical legal effect upon an existing controversy, namely whether Riceland could be liable to SFCFA. Accordingly, we turn to the arguments on appeal.

### B. Brief Overview of Arkansas's Landlord–Lien Statute

In 1868, the General Assembly enacted Arkansas's landlord-lien statute, which provided in relevant part: "That every landlord shall have a lien upon the crop grown upon the demised premises in any year for rent that shall accrue for such year, and such lien shall continue for six months after such rent shall become due and payable." *See* Act of July 23, 1868, No. 67, § 1, 1868 Ark. Acts 245, 245. The statute has remained mostly unchanged since its inception.[2] In 2001, the General Assembly enacted a revised Article 9 of the Uniform Commercial Code. *See* Act of Apr. 10, 2001, No. 1439, 2001 Ark. Acts 5464. In doing so, the legislature inadvertently changed the law regarding landlords' liens, making such liens subject to application of the Uniform Commercial Code. *See* Act of Feb. 3, 2003, No. 32, § 1, 2003 Ark. Acts 95, 96. Accordingly, in 2003, the General Assembly enacted Act 32, titled "An Act to Restore this State's Traditional System for Establishing Landlords' Liens on Crops and to Exempt Landlords' Liens on Crops from the Uniform Commercial Code–Secured Transactions; and for Other Purposes." *Id.* The General Assembly explained the purpose of the Act as follows:

> The General Assembly has determined that by the enactment of Act 1439 of 2001 it inadvertently changed the law regarding landlords' liens on crops. It is the intent of this act to correct that inadvertent change, remove landlords' liens on crops from the application of the Uniform Commercial Code, reestablish Arkansas Code 18–41–101 and 18–41–103 as the law applicable to landlords' liens on crops, and thereby make landlords' liens under Arkansas Code 18–41–101 and 18–41–103 superior to all other liens on the same collateral.

*Id.* at 96.

The current version of section 18–41–101 provides:

---

**2.** In 1875, the General Assembly enacted Act 29, repealing sections 4096 and 4099, of Gantt's Digest, which gave a laborer's lien precedence over a landlord's lien. *See* Act of January 8, 1875, No. 29, § 1, 1875 Ark. Acts 84, 84.

(a) Every landlord shall have a lien upon the crop grown on the demised premises in any year for rent that shall accrue for the year.

(b) (1) The lien is perfected and shall have priority over a conflicting security interest in or agricultural lien on the crop regardless of when the conflicting security interest or agricultural lien is perfected.

(2) The lien shall continue for six (6) months after the rent shall become due and payable, and no longer.

## C. Enforceability of Statutory Lien

Riceland asserts that the circuit court erred as a matter of fact and law when it entered judgment against Riceland pursuant to Arkansas's landlord-lien statute. Riceland contends that the Trust's statutory lien is not enforceable against Riceland because it bought rice from Burress in good faith and without notice that Burress was a tenant who had failed to pay rent to the Trust.

Riceland does not challenge that a landlord's lien is perfected automatically, or that the lien has priority over any other security interest in the same crop. Rather, Riceland maintains that the landlord's lien was not properly applied against Riceland, a good-faith buyer of Burress's crops.

At the hearing on the landlord's lien issue, Randy Pearson, co-trustee of the Trust, testified that he was not aware of any notice of a landlord's lien given by the Trust to Riceland. Tenant Burress testified that when he delivers rice that he has grown, he tells the purchaser what farm the rice comes from and informs the purchaser of the Farm Service Agency ("FSA") farm number. Burress stated that he was unsure whether the FSA office would inform a purchaser who owns the land. Finally, Burress testified that he did not inform Riceland that the rice came from the Trust's farm.

Terry Richardson, Vice–President for Administration of Members Services and Corporate Secretary for Riceland, testified that he did not know whether Riceland could have contacted the FSA office to find out who owned the farm where Burress grew the rice or whether he could have learned from the FSA office if rent had been paid. Richardson said that he did not know whether the FSA office could provide this information because Riceland does not ask for the information. Richardson further stated that he never received notice from the landlord of any kind of lien filed against the 2005 crop.

The circuit court made the following findings:

Riceland received the rice produced by Mr. Burress on the plaintiff's farmland. Riceland did not inquire as to whether the rice was subject to a landlord's lien. Riceland did not inquire of Mr. Burress as to the presence of a landlord. Riceland made the purchase price checks payable to Mr. Burress's two corporate entities and to the St. Francis County Farmers Association. The question then, is what duty, if any, did Riceland have to make an inquiry as to the presence of a landlord? Riceland paid out more than $296,000 without inquiry. Riceland's representative testified that, "Riceland does not ask." . . . . Is there a duty in the case at bar, and, if so, who has the duty? To what degree is a purchaser of crops required to inquire as to the presence of a landlord and, consequently, a landlord's lien? To what degree is a landlord required to put the "world" on notice of its statutory landlord's lien. May a purchaser claim "no notice" by simply asking no questions? Is there an affirmative duty on the part of purchaser of crops to do

something in order to make a defense of "no notice?"

There is no evidence in the record as to past practices of the landlord, tenant, and purchaser regarding notice, except that Mr. Burress testified that he had sold rice to Riceland during some of the years covered by the prior lease agreement between the plaintiff and him. There is no evidence in the record as to whether the plaintiff or Mr. Burress had notified Riceland in past years of the landlord's lien.

This court finds that Riceland, as a purchaser of the rice, had a duty to make a reasonable investigation or inquiry as to whether Mr. Burress was a tenant or owner of the farmland from which the rice was produced. A simple inquiry of Mr. Burress would have placed Riceland on notice that Mr. Burress did not own the farmland. With that knowledge, Riceland would have been on notice of the landlord's statutory right to a lien. For Riceland to do nothing more than check the Farm Service Agency numbers and claim "no notice," thereby defeating the landlord's lien, allows for an automatic and complete defeat of the statutory letter and intent of Arkansas Code Annotated § 18–41–101. Under Arkansas law, the landlord's lien has priority over all other liens and the landlord is not required to give notice to anyone (as is required under liens pursuant to the UCC). If a purchaser may simply state that he did nothing and received no notice, thereby defeating the clear intent of Arkansas Code Annotated § 18–41–101, that code section has no force. It may as well not exist in its present form. It might as well require notice "to the world." It makes little sense to allow such non-action to defeat the intent of the statute.

. . . .

This court finds that Riceland did not act in good faith in purchasing the rice. Good faith requires a reasonable investigation or inquiry which would have quickly and easily provided information which would have warned it that rice is being offered for sale upon which there exists a landlord's lien. Riceland had to do something to investigate or inquire about the ownership of the land from which the rice was produced. Riceland should not be allowed to claim "no investigation, no notice" as a defense to the priority of the landlord's lien when the least bit of effort would have placed it on notice.

This court has held that if a tenant sells the crop to a purchaser without notice of the landlord's lien, the buyer takes title free of the lien. *Holmes v. Riceland Foods, Inc.,* 261 Ark. 27, 546 S.W.2d 414 (1977); *Van Etten v. Lesser–Goldman Cotton Co.,* 158 Ark. 432, 250 S.W. 338 (1923). In *Van Etten,* we explained:

For the law is that, while one buying [a crop] subject to a landlord's lien is not liable as for conversion if he has no knowledge of the lien, yet if the purchaser is in possession of facts sufficient to put him upon notice that the [crop] is subject to the lien of a landlord, good faith requires him to pursue the inquiry to the extent of investigating the facts of which he has knowledge, and, if reasonable diligence in the investigation of these facts would have led to the knowledge of the actual existence of the lien, then the purchaser is liable for a conversion, just as he would have been had he possessed the actual knowledge. The act of purchasing the [crop] destroys the landlord's lien, and one cannot do this and escape liability for so doing except when he has acted in good faith in making the purchase, and good faith requires a reasonable investigation of any

information of which the purchaser has possession calculated to warn him that he is being offered [a crop] upon which there exists a landlord's lien.

*Van Etten,* 158 Ark. at 433–34, 250 S.W. at 338.

■■■ To address Riceland's argument on appeal, we must determine whether, as the circuit court concluded, pursuant to section 18–41–101, a purchaser of crops has a duty to make a reasonable investigation or inquiry as to whether the seller of crops is a tenant or owner of the farmland from which the crops were produced. This court reviews issues of statutory interpretation de novo, because it is for this court to determine the meaning of a statute. *McMickle v. Griffin,* 369 Ark. 318, 254 S.W.3d 729 (2007). Our standard of review for issues of statutory construction is well settled:

> The basic rule of statutory construction is to give effect to the intent of the legislature. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible.

*Great Lakes Chem. Corp. v. Bruner,* 368 Ark. 74, 82, 243 S.W.3d 285, 291 (2006) (internal citations omitted).

■■ As previously noted, section 18–41–101 provides:

> (a) Every landlord shall have a lien upon the crop grown on the demised premises in any year for rent that shall accrue for the year.

(b) (1) The lien is perfected and shall have priority over a conflicting security interest in or agricultural lien on the crop regardless of when the conflicting security interest or agricultural lien is perfected.

(2) The lien shall continue for six (6) months after the rent shall become due and payable, and no longer.

No words in the landlord-lien statute specifically refer to a duty on the part of the purchaser; however, it is clear from our case law interpreting the statute that we have held, in certain situations, purchasers have a duty to make a reasonable investigation regarding whether crops are subject to the lien of a landlord. *See, e.g., Holmes, supra; Merchants' & Planters' Bank v. Meyer,* 56 Ark. 499, 20 S.W. 406 (1892).

In *Holmes,* we concluded that Riceland, a purchaser of rice and soybeans from Frank and Louis Alpe and Alpe Farms, Inc., was "unquestionably on notice" of a landlord's lien where Louis Alpe informed Riceland that the crops had been grown by the Alpes as tenants, attached to an FHA security agreement were waivers by which the various lenders to some extent subordinated their liens to the FHA's advances, and Riceland checked the records every summer to discover liens against its members. *Holmes,* 261 Ark. at 28, 30, 546 S.W.2d at 415. We stated that "Riceland had more than sufficient information to require it to make a reasonable inquiry, which would have disclosed the landlord-tenant relationship." *Id.* at 28, 546 S.W.2d at 416.

In *Meyer,* we held that a grocery company that had bought cotton acquired notice of a lien so that it could be held liable to the landlord for damages suffered by him due to the destruction of the lien. The court wrote:

Did the Hammett Grocer Company have notice of the fact that Meyer held a lien on the ninety-seven bales of cotton delivered to it by Ritchie & Fitzhugh at the time it received and sold them? It had notice of every fact necessary to show that he had such a lien, except, perhaps, actually knowing that the rent was unpaid; but it had knowledge of enough to put it on inquiry to ascertain the fact in that regard, and that was sufficient notice of whatever an inquiry would have revealed. It knew that Ritchie & Fitzhugh were tenants of Meyer, and that he had a lien on the crops grown by them, because the statute gave it to him, and every one is presumed to know the law. It also had reason to believe that they were unable to grow the crops without financial aid from others, because they applied to it for such assistance. The reasonable apprehension was that the rent was unpaid, and good faith and a proper regard for the rights of another demanded an inquiry as to the payment of the rent before making any sale or disposition of the cotton which would likely impair or destroy the landlord's lien. That inquiry, properly made, would have discovered the lien. It, therefore, had notice.

*Meyer,* 56 Ark. at 504–05, 20 S.W. at 407.

In *Lesser–Goldman Cotton Co. v. Miller,* 169 Ark. 1099, 277 S.W. 865 (1925), we concluded that the following facts gave rise to a duty to inquire on the part of the purchaser:

[A]ppellant had information that a part of the cotton it got from Williamson Brothers in 1920 and 1921 was raised on the Murrell farm, and that Mrs. Murrell had a landlord's lien thereon for the rent. It paid the rent drafts for these two years to Mrs. Murrell upon the cotton, which Williamson Brothers shipped to it under the mark "M". Cotton marked in the same way was shipped to it by Williamson Brothers in 1922, and this information was sufficient to put it upon inquiry. Had appellants made inquiry, it would have ascertained that the 21 bales of cotton marked "M" were raised on Mrs. Murrell's farm, and that under her lease she was entitled to a landlord's lien thereon for $850. Good faith required that it make an investigation.

*Miller,* 169 Ark. at 1101, 277 S.W. at 865–66.

The instant case is distinguishable from *Holmes, Meyer,* and *Miller.* Prior versions of the landlord-lien statute were at issue in those cases; however, the language regarding the liens remains virtually unchanged, save the reiteration of the landlord's priority in section 18–40–101(b)(1), as amended in 2003.[3]

In contrast to *Holmes, Meyer,* and *Miller,* there is no evidence in the instant case that Riceland had any knowledge that would require it to make an investigation regarding a landlord's lien. The circuit court specifically found that "no notice was given by anyone to Riceland" of the existence of a landlord's lien. Burress testified that he did not inform Riceland that he was a tenant or that there was a lien on the crops. Riceland's representative, Terry Richardson, testified that Riceland had no knowledge of the lien. In none of our

---

**3.** The legislature is presumed to know the decisions of the supreme court, and it will not be presumed in construing a statute that the legislature intended to require the court to pass again upon a subject where its intent is not expressed in unmistakable language.

*Martin v. Pierce,* 370 Ark. 53, 257 S.W.3d 82 (2007). The statute, amended in 2003, contains no language stating that the legislature intended to create an affirmative duty on the part of purchasers to inquire about whether crops were subject to a landlord's lien.

prior cases have we held that purchasers have an affirmative duty to inquire about a landlord's lien in every transaction. It was only when the surrounding facts put the purchaser on notice that it might be purchasing crops from leased land that a duty arose to make further investigation. Here, there are no facts in the record that put Riceland on notice that it might be purchasing rice from leased land. Accordingly, based on our precedent, Riceland had no duty to investigate. In this case, Riceland was an innocent purchaser. Therefore, the circuit court erred when it enforced the landlord's lien against Riceland.

### D. Satisfaction of Judgment—Priority

Because we have concluded that the circuit court erred in enforcing the landlord's lien against Riceland, we need not address Riceland's argument regarding the priority of satisfying the judgment.

## II. *Cross–Appeal*

### A. Attorneys' Fees—SFCFA

The Trust contends that the circuit court erred when it failed to award the Trust reasonable attorneys' fees against SFCFA in favor of the Trust. SFCFA contends that the Trust is not entitled to pursue a claim for attorneys' fees against SFCFA because the Trust gave to SFCFA a satisfaction of judgment and release of all claims after SFCFA paid the judgment. We agree.

The satisfaction, captioned "Satisfaction of Judgments and Release of All Claims As to St. Francis County Farmers Association Only," provides that the Trust was given judgment against SFCFA in the sum of $57,330, as of May 19, 2008, plus prejudgment interest at six percent per annum from January 10, 2006, to May 19, 2008, and postjudgment interest at seven and one-quarter percent per annum from May 19, 2008, less $2500 paid by Cargill. The satisfaction noted that the Trust was "not granted judgment for attorneys fee or costs against Defendant SFC Co-op." Finally, the satisfaction also provides that the Trust "release[s] any and all claims they have or may have against St. Francis County Co-op arising from this litigation." Because the satisfaction released SFCFA from any and all claims arising from the litigation, and the attorneys' fees sought by the Trust arise from the litigation, the Trust is barred from seeking fees from SFCFA.

### B. Attorneys' Fees—Riceland

We need not consider the Trust's argument concerning the circuit court's denial of the Trust's request for attorneys' fees from Riceland because we have concluded that the circuit court erred in enforcing the landlord's lien against Riceland. Even assuming attorneys' fees pursuant to Arkansas Code Annotated section 16–22–308 (Repl.1999) would be allowed for the claims in this case, the Trust is no longer the prevailing party and is, therefore, not entitled to fees. *Id.*

### C. Setoff

The Trust contends that the circuit court erred when it awarded Riceland and SFCFA a setoff for the settlement paid by Cargill. We need not consider the Trust's argument as it relates to Riceland, as we have concluded that the circuit court erred in enforcing the landlord's lien against Riceland. We also do not consider the Trust's argument as it relates to SFCFA because the satisfaction released SFCFA from any and all claims arising from this litigation.

Reversed and remanded on direct appeal; affirmed on cross-appeal.

DANIELSON, J., dissents.

PAUL E. DANIELSON, Justice, dissenting.

Because the majority disregards the entirety of the General Assembly's 2003 amendment of Arkansas Code Annotated § 18–41–101, I respectfully dissent.

While the bulk of the landlord-lien statute has remained virtually unchanged since its inception, Act 32 of 2003, § 3 did amend the substance of the statute. In that amendment, the legislature not only attempted to restore the prior landlord-lien statutory scheme, as acknowledged by the majority, but it also took pains to add language regarding the perfection ⌊16of a landlords' lien. Specifically, the "2003 amendment inserted the present second sentence." *See* Ark.Code Ann. § 18–41–101 Amendments. That second sentence provides:

(b) (1) *The lien is perfected* and shall have priority over a conflicting security interest in or agricultural lien on the crop regardless of when the conflicting security interest or agricultural lien is perfected.

Ark.Code Ann. § 18–41–101(b)(1) (Repl. 2003) (emphasis added).

Since essentially the beginning of Arkansas jurisprudence, but prior to the 2003 amendment, this court had held that it was settled that "if a tenant sells the crop to a purchaser without notice of the landlord's lien, the buyer takes title free of the lien." *Holmes v. Riceland Foods, Inc.*, 261 Ark. 27, 546 S.W.2d 414 (1977) (citing *Van Etten v. Lesser–Goldman Cotton Co.*, 158 Ark. 432, 250 S.W. 338 (1923); *Puckett v. Reed*, 31 Ark. 131 (1876)). And, as the majority acknowledges, we observed in 1923:

For the law is that, while one buying cotton subject to a landlord's lien is not liable as for conversion if he has no knowledge of the lien, yet if the purchaser is in possession of facts sufficient to put him upon notice that the cotton is subject to the lien of a landlord, good faith requires him to pursue the inquiry to the extent of investigating the facts of which he has knowledge, and, if reasonable diligence in the investigation of these facts would have led to the knowledge of the actual existence of the lien, then the purchaser is liable for a conversion, just as he would have been had he possessed the actual knowledge. The act of purchasing the cotton destroys the landlord's lien, and one cannot do this and escape liability for so doing except when he has acted in good faith in making the purchase, and good faith requires a reasonable investigation of any information of which the purchaser has possession calculated to warn him that he is being offered cotton upon which there exists a landlord's lien.

*Van Etten v. Lesser–Goldman Cotton Co.*, 158 Ark. at 433–34, 250 S.W. at 338. The question, then, is whether this caselaw is still controlling after 2003, when the General Assembly added language regarding the perfection of a landlord lien. I cannot say that it is.

⌊17Our caselaw has always provided that a landlord lien is had and that one without notice of the lien is an innocent purchaser of crops. Despite this well-settled doctrine, however, the General Assembly saw fit to add the additional language contained in (b)(1). While the majority deems that subsection a reiteration of the landlord's priority, I believe that the amendment is much more significant.

We have long held that the General Assembly is presumed to be aware of this court's decisions. *See Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997). Therefore, had the General Assembly simply sought to reestablish the landlord-lien law as it was prior to 2001

and reiterate the priority of such a lien, it could have so stated without further change to the statute. But, it did not; instead, it added the language stating that a lien is perfected. Accordingly, we cannot ignore that language, because when this court construes a statute, it does so such that no word is left void, superfluous or insignificant, giving meaning and effect to every word in the statute, if possible. *See Osborn v. Bryant,* 2009 Ark. 358, 324 S.W.3d 687.

The added language provides that the landlord lien is perfected. "Perfect" is defined as:

> To take all legal steps needed to complete, secure, or record (a claim, right, or interest); to provide necessary public notice in final conformity with the law <perfect a security interest> <perfect the title>

*Black's Law Dictionary* 1173 (8th ed.2004). *See also Wright v. City of Little Rock,* 366 Ark. 96, 233 S.W.3d 644 (2006) ("Perfected means that all legal steps have been taken which are necessary to complete the action undertaken. *See Black's Law Dictionary* 1173 (8th ed.2004")). With the import of the term "perfect" in mind, it is clear that since 2003, the landlord-lien statute, by its plain language, has provided that, once a landlord has a lien, it is perfected. In other words, the landlord has done all that is necessary to secure his interest and provided the necessary notice.

It would seem, then, that a purchaser is now charged with notice, or notice is presumed, once the landlord has his lien. That being the case, a purchaser would then have a duty to inquire or investigate as to the owner of the land before paying for the crop. Therefore, the circuit court did not err in finding a duty to inquire. Accordingly, neither actual nor constructive notice was necessary, as claimed by Riceland, as notice was presumed and automatic upon the establishment of the Trust's lien. Because Riceland was charged with notice but failed to make an inquiry, I would affirm the circuit court's order.